AUGUSTUS V. PAYTON *vs.* HERBERT ALMY, Administrator, *et als.*

A. transferred personalty to B. to hold, etc., during the life of A., and at the death of A. to convey it as per a written *memorandum* to be given to B. No such *memorandum* was ever given to B., but one was found in the trunk of A. after the death of the latter. Evidence showed that A. had spoken of an incomplete *memorandum* to be finished and given to B. or left in the trunk of A., and that A. afterwards was about making a will, but failed to do so.

*Held*, that B. took the trust property as trustee for A. during A.'s life, and for A.'s executor or administrator on A.'s death, unless other trusts were constituted before A.'s death.

*Held*, further, that no other trusts were constituted by communication to B. and acceptance by him.

*Held*, further, that the trunk *memorandum* was testamentary in nature, and ineffectual to constitute a trust.

*Held*, further, that B. held the trust property as trustee for the administrator of A.

BILL IN EQUITY for instructions.

*February* 6, 1892. STINESS, J. This bill sets out that Mrs. Mary W. Chapman, a widow, without children, in the summer of 1887, made an absolute transfer of all her personal property, amounting to about six thousand dollars, to the complainant, in trust, to manage the same and to pay over the income, or more, to her during her life, and at her decease to transfer it as she should direct by a written *memorandum*, signed by her, to be handed to the complainant at some subsequent time. The testimony adduced by the complainant goes further, and shows that about a year later Mrs. Chapman called the complainant to an interview with herself and her sister, when, after stating in part what she proposed to do, she added she had not the list made out complete, but she would make it out after she went home, and, as variously stated by witnesses, give it to Mrs. Payton, or leave it in her trunk or where he could find it. No *memorandum* was given to Payton by Mrs.

Chapman; but one was in her trunk, a few days prior to her decease, when she called the attention of Dr. Rowe to it. He examined it, saying he did not think it would stand in law, and suggested that she make a will. To this she assented, and a scrivener was called, but she was then too feeble to do anything about it, and died soon after, on the 30th of July, 1889. Upon her decease the trunk containing the *memorandum* was delivered by Dr. Rowe to the complainant according to her request, and the question now comes whether a trust was established to distribute the property in his hands pursuant to the *memorandum*, or whether, no such trust having been established, the complainant shall pay it over to the administrator of Mrs. Chapman's estate.

The *memorandum* was as follows: —

> "October 1888. Providence R. I.
> this disposal of my Property, as near
> as I can think is just to all
> to my Sister E. G. Amsbury two thou
> to Augustus V. Payton one thousand
> to Ella W. Eddy five Hundred
> to Carrie Payton five Hundred.
> to Emma Rounds 3 Hundred
> to Clarence B. Sisson, 3 Hundred
> to Addie Shaw three hundred & fifty
> Mary Peck fifty dollars
> which leaves one thousand
> for my sickness, and my
> burial expenses, and to
> settle honestly all my affairs
> Augustus V. Payton is to
> attend to these my requsts
> and if I should live to desire
> any change in regard to this
> I will make it known"

MRS. MARY W. CHAPMAN.

Objection is made to the competency of witnesses interested in the trust, but passing the objection, in order to consider the merits of the controversy, we are of opinion that the testimony, assuming it to be competent, shows no completely constituted trust. In *Ray* v. *Simmons*, 11 R. I. 266, it was stated that a trust in personal

property may be created by the declaration of the holder, orally or in writing, that he holds it, *in presenti*, in trust for another. Accordingly, upon the transfer of the property to the complainant and his agreement to hold it in trust to pay the income or more to Mrs. Chapman, a good trust was so far created. The complainant also agreed to deliver the property at her decease to such persons as she should afterwards designate; but, confessedly, for a year or more after the transfer no designation was made. Without the designation there would be no further trust, and so, up to the time of such designation, he held the property in trust for Mrs. Chapman, and her administrator or next of kin, in case of her death. Was the conversation, at which the complainant and Mrs. Amesbury were present, such a designation? Evidently it was not so intended, because Mrs. Chapman referred to the *memorandum* as that which was to control. It was not then completed, but was to be completed. It was to be left for the complainant, and by that alone he was to be guided. The conversation was not understood to be the constitution of a trust in itself, but an intimation of a part of what the *memorandum* would contain, to see if it met their approval. Under the case as made, there is no question that Mrs. Chapman had a perfect right to change the disposition of the property, and she so states in the *memorandum* itself.

The conversation, then, was not the creation of a further trust, but an indication of the disposition of a part of her property which she then had in mind. The terms were neither complete nor final, nor understood to be so. They disclosed a certain present intention, but did not amount to a consummated trust, which was alone to be determined by the *memorandum* itself. The fact that the *memorandum* relied on agrees in part with the statement then made does not make the *memorandum* retroact upon the conversation to create a trust when none was created at the time; but the *memorandum*, which was understood by all to be the controlling agent, must stand by itself. At the time of Mrs. Chapman's death, no new trust having been constituted by communication to and acceptance by the trustee, he stood as trustee for her next of kin, and therefore had no such interest in the property as would enable him to affect their rights by confessing a trust in the property held by him. *Johnson* v. *Ball*, 5 DeG. & Sm. 85.

The question then comes whether the *memorandum*, as left, constitutes a trust for the persons named therein? Questions of this kind have generally arisen under a bequest coupled with a secret trust. In such cases the rule seems to be settled that when the gift is made upon the knowledge of the trust and promise, express or implied, to execute it, the conscience of the donee is bound, and the trust will be enforced. *Moss* v. *Cooper*, 1 Johns. & H. 352; *Riordan* v. *Banon*, Ir. R. 10 Eq. 469; *In re Fleetwood*, *Sidgreaves* v. *Brewer*, L. R. 15 Ch. Div. 594; *Stone* v. *Hackett*, 12 Gray, 227. But when the terms of the trust are not communicated to the trustee nor assented to by him, but are in the nature of a testamentary disposition of the property, then there is no complete constitution of a trust, and it cannot be enforced. In *Johnson* v. *Ball*, 5 DeG. & Sm. 85, a testator gave a policy of assurance to two trustees, "to hold upon uses appointed by letter signed by them and myself." No such letter existed at the date of the will, but the testator had previously asked them to accept the bequest for the benefit of the persons named. Long after the date of the will he wrote a letter to the executors of the will, requesting them to deliver over the bequest to the trustees for the purposes they had agreed to carry out, and also gave the trustees a *memorandum* signed by himself, declaring the trusts. The court held that the trust, by its terms, stood upon the letter, and not upon the oral request; that the letter would not operate as a gift, *inter vivos*, and that the testator could not prospectively create for himself a power to dispose of property by an instrument not executed as a will. The facts of that case are very close to the facts in the case before us, except that there the *memorandum* was delivered to the trustee. If the *memorandum* in this case had been delivered to the trustee, we see no reason why the trust would not have been complete. But it is argued that leaving the *memorandum* in the trunk, by arrangement, should be taken to have the same effect as a delivery. We think not. A delivery of a paper, whether open or sealed, indicates a completed act. The retention of a paper in one's own possession indicates that the matter may not be finally decided; that it is subject to change, and that the maker is not ready to part with dominion over it. All this is expressly stated in the paper before us. How, then, can the court know that

the paper contains the final wishes of the donor? She had not put it out of her power to change it. She may have contemplated a change, had she been able to make it. A delivery would have been an act on her part indicative of finality; but merely leaving the paper in the trunk, coupled with the statement that it is subject to change, is not an act which definitely attests her mind in regard to the terms of the trust, or one which permits knowledge and acceptance of such terms on the part of the trustee.

As stated by Kay, J., *In re Boyes, Boyes* v. *Carritt,* L. R. 26 Ch. Div. 531, 536: "If the trust was not declared when the will was made, it is essential, in order to make it binding, that it should be communicated to the devisee or legatee in the testator's lifetime, and that he should accept that particular trust." Vice-Chancellor Page Wood says in *Moss* v. *Cooper,* 1 Johns. & H. 352, 366: "I apprehend that, to fasten any trust upon an absolute bequest of property, it is necessary to prove knowledge on the part of the legatee of the intended trust, and acquiescence, either by words of consent or by silence, when the intention is communicated to him." We know of no case which establishes a trust which is not made known to the trustee nor assented to by him, and we do not see, upon principle, how such a trust could be established. In *Ireland* v. *Geraghty,* 11 Biss. 465, a case relied on by the complainant, Judge Blodgett recognizes this doctrine when he says: "There can be no doubt of the fact that by the conveyance of the property in question to the bishop he became a trustee, and until the objects of the trust were designated he was a mere naked trustee; but as soon as the grantor had in writing indicated the uses to which the property was to be applied, and the trustee had accepted the terms of the trust, the transaction was complete." The other cases cited by the complainant relate to trusts completely constituted by the donor and accepted by the trustee. In *Stone* v. *Hackett,* 12 Gray, 227, however, it is intimated that, if there were any facts to show that the transaction was intended to be testamentary in its character, there would be ground for withholding the sanction of the court. See, also, *Olliffe* v. *Wells,* 130 Mass. 221; *Thayer* v. *Wellington,* 9 Allen, 283. In the present case such an intention is apparent.

Our conclusion is, that the complainant took the property in

question as trustee for Mrs. Chapman during her life, and for her executor or administrator upon her decease unless other trusts should be constituted before that time; that no trusts were afterwards constituted by communication to and acceptance by him, in such manner as to show a final and definite settlement thereof; that the *memorandum* left by her, being testamentary in character, was ineffectual to constitute a trust; and that the complainant, therefore, holds the property in question in trust for the administrator of her estate.

*Francis W. Miner & William G. Roelker*, for complainant.
*Arthur L. Brown & Amasa M. Eaton*, for respondents.