GOODWIN *v.* HAMPTON TRANSPORTATION CO.

CORPORATE STOCK — INDORSEMENT — BANKRUPTCY SALE — BONA FIDE PURCHASER.

A purchaser of corporate stock at bankruptcy sale, who took with notice that such stock had been given by the bankrupt to his daughter, and that the latter's subsequent indorsement and return of the certificate thereof to her father was to enable it to be pledged for corporate debts, could not hold the stock as against the daughter.

Appeal from Bay; Connine, J., presiding. Submitted February 18, 1903. (Docket No. 89.) Decided May 12, 1903.

Bill by Grace E. Goodwin against the Hampton Transportation Company and Benjamin Boutell for an accounting. From a decree for complainant, defendants appeal. Affirmed.

*McDonell & Duffy*, for complainant.

*T. A. E. & J. C. Weadock*, for defendants.

MONTGOMERY, J.   This is an appeal from a decree of the circuit court for the county of Bay in chancery, in which an accounting was had, and a determination that complainant was entitled to the sum of $7,576.11 as her interest in the earnings and proceeds of the sale of the

steamer C. A. Eddy.    No exceptions were filed to the find-
ings on the accounting, and the only question which need
be discussed is whether the complainant was the owner of
the interest in the vessel claimed by her.

. In 1895 the steamer C. A. Eddy was owned by the
Hampton Transportation Company, the stock of which
was owned principally by F. W. Wheeler.    The defend-
ant Benjamin Boutell purchased the steamer, and directly
afterwards Spencer O. Fisher purchased a one-half inter-
est from Boutell.    The parties then devised the scheme of
continuing the corporate existence of the Hampton Trans-
portation Company, and the previous owners of the stock
transferred to Fisher, Boutell, and their associates all the
stock of the corporation, and this stock was placed as fol-
lows:  With Spencer O. Fisher, · 399 shares; Benjamin
Boutell, 300 shares; Grace E. Fisher (the present com-
plainant), 100 shares; William H. Boutell, 100 shares;
Fred E. Boutell, 100 shares; and Alvah E. Lockwood, 1
share.    A meeting of the stockholders was then held, and
the above-named persons were elected directors.    At the
same meeting, on motion of the defendant Boutell, the
ownership in the shares of stock was declared to be as
above stated.

At the time of the purchase but $5,000 cash was
advanced, the remainder of the purchase price being
obligations of the company assumed by the purchasers;
the $5,000 being advanced in equal proportions by Boutell
and Fisher, they receiving credit upon the books of the
company.    Stock certificates were issued to the respective
holders of stock as above stated, the complainant receiving
her certificate for 100 shares, and retaining it in her
possession until August, 1898.    At this time the corpora-
tion was indebted to James S. Galloway in the sum of
$21,500, and desired a further advance of $7,500.    Mr.
Galloway insisted, as a condition to advancing this further
sum, that all the stock of the company be placed in his
hands as collateral to secure the entire loan.    The com-
plainant testifies that this demand was made known to her

by her father, Spencer O. Fisher, and that, for the purpose of complying with this requirement, she indorsed her certificate in blank, and handed it to her father. The defendant Boutell also procured the stock held by his two sons, indorsed in like manner, and they met for the purpose of turning the stock over to Mr. Galloway. Mr. Spencer O. Fisher also for some reason placed his own indorsement upon complainant's stock, and the stock thus assembled was placed in the hands of Mr. Galloway as security, and was retained by him until October, 1900.

In the meantime Mr. Fisher was forced into bankruptcy, and in his petition there was listed stock in the Hampton Transportation Company $25,000. Hon. T. F. Shepard testifies that this was probably a mistake of Mr. Fisher, but the circumstances are not very clearly explained. At a subsequent sale of the assets of the bankrupt the defendant Boutell became the purchaser of this stock as the stock of the bankrupt, at the same time entering into an agreement with Mr. Fisher which in part provided for a repayment of the price bid out of the earnings of the vessel. This is a fact which might be of considerable significance if we were convinced that Mr. Boutell would otherwise be a good-faith purchaser. The defendant Boutell contends that he is such good-faith purchaser, relying upon the rule asserted in *McLean* v. *Medicine Co.*, 96 Mich. 479 (56 N. W. 68), that the purchaser of stock for value will be protected as against the latent equities of one who indorses in blank, and thus invests the custodian with evidence of title.

We think the case is not one in which the defendant Boutell occupies a position which entitles him to invoke this rule. There can be no doubt that the placing of this stock in the complainant's name in the first instance was a completed gift; nor is there any doubt that all the parties, including Mr. Boutell, knew this fact. By his own motion the ownership was formally declared to be in complainant. We do not overlook the suggestion that the stock was placed in complainant's hands for the purpose of making up a board of directors. But it is significant that, when

this was the only purpose, Mr. Fisher deemed it sufficient to part with one share, as in the case of Lockwood. Boutell, having notice of complainant's ownership, also had notice that the purpose of this transfer was to assemble the stock for the purpose of placing the same with Mr. Galloway as collateral. In other words, he knew that complainant did with her stock precisely as he did with his own to effectuate the same purpose. These circumstances repel any inference which he might otherwise have drawn that the indorsement in blank was for the purpose of transferring title. The finding of the circuit judge was fully justified.

The decree will be affirmed, with costs of both courts to complainant.

The other Justices concurred.