## FISHER v. HAMPTON TRANSPORTATION CO.

1. TRUSTS—CONSIDERATION—ENFORCEMENT.

    A trust without consideration moving from the *cestui que trust* will not be enforced, either at law or in equity, unless executed or fully declared, to take effect *in præsenti.*

2. SAME—BANKRUPT'S ESTATE—SALE—CONTRACT.

    An agreement between complainant, a bankrupt, who had parted with his property interests, and defendant, that at the bankrupt sale, at which complainant was not to bid, defendant should bid in the interest of the bankrupt's estate in certain properties, and hold the same in trust for the payment of certain obligations, after payment of which the property was to be assigned to whomever complainant should designate, was without consideration, and was not an executed trust, but, in effect, a promise to make a gift *in futuro.*

3. BANKRUPT SALE—COMPETITION—PUBLIC POLICY.

    An agreement between complainant, a bankrupt, and defendant, that complainant should not bid at the bankrupt sale, made after bids had already been offered and the sale was

still open, was clearly an effort to thwart competition, and void upon grounds of public policy.

4. EQUITY—INVALID CONTRACT—PLEADING.

Where, in a proceeding in equity, it appears from the complainant's own showing that a contract which he seeks to enforce is against public policy, relief will be denied him, although the invalidity of the contract is not pleaded by defendant.

Appeal from Saginaw; Snow, J. Submitted January 6, 1904. (Docket No. 7.) Decided March 29, 1904.

Bill by Spencer O. Fisher against the Hampton Transportation Company, Benjamin Boutell, and others for an accounting. From a decree dismissing the bill, complainant appeals. Affirmed.

*McDonell & Duffy*, for complainant.

*T. A. E. & J. C. Weadock* (*Weadock & Purcell*, of counsel), for defendants.

MONTGOMERY, J. In the year 1895, and for some years prior thereto, the defendant the Hampton Transportation Company was and had been a corporation, duly organized and existing under the laws of the State of Michigan, with a capital stock of $50,000, represented by 1,000 shares of the par value of $50 per share. Its sole property was the steamer Eddy. Complainant, at the time of the bankruptcy proceedings hereinafter referred to, was the owner of stock in this corporation, and was also the owner of four-ninths of a vessel known as the Lizzie Madden.

On the 26th of June, 1899, complainant filed a voluntary petition in bankruptcy, and in his petition alleged that he was the owner of one-half of the stock of the Hampton Transportation Company and four-ninths of the Lizzie Madden. As a matter of fact, however, Fisher was the owner of but four-tenths of the stock of the transportation company, one-tenth having been donated by him to his daughter at the time of the organization of this corporation, and thereafter retained by her. Boutell owned a

large interest in the corporation, and claims to have advanced to the company money in excess of the amount Fisher advanced. There was also owing by the Hampton Transportation Company, upon notes indorsed by both Fisher and Boutell, $29,000, to James S. Galloway, and the stock of the corporation stood pledged to Mr. Galloway as security for this sum.

The assets of the bankrupt were advertised for sale, and the sale opened on the 2d of October, 1899. At this sale both complainant and defendant Boutell were bidders upon the complainant's interest in the Lizzie Madden and the stock in the Hampton Transportation Company. The bid on the latter item exceeded $1,200, and the sale was, on request of Mr. Fisher's representative, adjourned to October 5th.

On the morning of October 5th, previous to the sale of these vessel interests, Mr. Shepard, representing Mr. Fisher, Mr. Weadock, representing Mr. Boutell, and both Mr. Boutell and Mr. Fisher, met at the court-house, where the sale was to proceed, and entered into an arrangement. The parties are not agreed precisely as to what that arrangement was. The complainant contends that the agreement was that Mr. Boutell should bid in the interest of the bankrupt estate in these two vessel properties, and hold the same in trust for the purposes, *first*, of repaying the purchase price, *second*, of paying the claim held by the Saginaw Bay Towing Company (in which Mr. Boutell was interested) against the firm of Turner & Fisher up to the amount of $25,000, or if the Eddy (which comprised the whole property of the Hampton Transportation Company) should sell for more than $65,000, the excess should also be applied to the indebtedness of Turner & Fisher to the Saginaw Bay Towing Company up to the amount of $5,000 more; that the earnings of the boats should be applied towards the Turner & Fisher indebtedness at the rate earnings of the Fisher interests in the boats, to be applied $12,500 out of the first year's earnings, and the remainder out of the second year's earnings, in case the Eddy was

not sold; and that, when these obligations were paid off, the property was to be assigned to whomsoever Fisher should designate.

The defendant disputes this agreement in some of its features. He denies that there was any agreement for trusteeship. He denies that there was an agreement to transfer the property at any time to Fisher, but insists that what he desired was to close out the property, and he did offer, in case he succeeded in doing so, to pay certain portions to Fisher, but that this was a mere gratuity; that the offer was made upon the theory that Fisher held a one-half interest in the Eddy, and not a four-tenths interest, and that, as a matter of fact, the defendant has since been required to account to complainant's daughter, Grace E. Goodwin, for a one-tenth interest in the Eddy and her earnings,[1] and has paid the same in excess of all that he should be required under the terms of his agreement to pay to complainant. The defendant also stands upon legal defenses, and insists that, at most, the entire arrangement was on his part a promise to make a gift to Mr. Fisher in the future; that there was no consideration passed to defendant Boutell which would support an executory trust; that the only conceivable consideration which might be suggested is that, because of this agreement, Fisher refrained from further bidding at the sale; and that, if the contract is based upon such a consideration, it is void upon grounds of public policy. The complainant, on the other hand, insists that there was a valid trust created. And this involves an inquiry as to what constitutes an executed trust.

Starting with the proposition that Fisher paid no consideration, it would seem to be clear, from the authorities, that before a trust could be enforced, either at law or in a court of equity, it must be an executed or fully declared trust, to take effect *in præsenti*. It seems also clear that in the present case, apart from the consideration furnished

[1] See *Goodwin* v. *Hampton Transportation Co.*, 133 Mich. 229 (94 N. W. 729).

by refraining from further bidding, there was no actual consideration. At this time Fisher had parted with all title to the property·in question. The title rested in his assignee in bankruptcy. He had no possible interest in the property. Whatever should come to him would be a mere gratuity, unless he could succeed in himself becoming the purchaser, and by this means make a profit on the stock or vessel. He could pass nothing to Boutell. The title had already passed to the assignee in bankruptcy.

It is difficult, then, to distinguish the transaction from a voluntary promise on the part of Mr. Boutell to buy in this property, and, if he should succeed in making a profit out of it, give to Mr. Fisher a portion of these profits. We do not understand such an arrangement to amount to an executed trust. It is a promise to make a gift *in futuro,* and partakes none the less of that character because it is made conditional upon a question of profits. As was said by Mr. Justice Long, in *Hamilton* v. *Hall's Estate,* 111 Mich., at page 296 (69 N. W. 485):

"The mere declaration of an intention or purpose to create a trust, which is not carried out, is of no value, and a mere agreement or statement of an intent to make a gift in the future is not sufficient. It must be such that, from the time it is made, the beneficiary has an enforceable equitable interest in the property, contingent upon nothing except the terms imposed by the declaration of the trust itself."

See, also, *Clay* v. *Layton,* 134 Mich. 317 (96 N. W. 458), and *Levi* v. *Evans,* 57 Fed. 677, 6 C. C. A. 500, which latter case contains a full and able discussion of the subject.

Was there a valid consideration for this agreement? It is well settled that any agreement based upon a consideration of an agreement to refrain from bidding at a sale of goods is void upon grounds of public policy. See *Atlas Nat. Bank* v. *Holm,* 71 Fed. 489, 19 C. C. A. 94; *Piatt* v. *Oliver,* Fed. Cas. No. 11,114; *Barton* v. *Benson,* 126 Pa. St. 431,(17 Atl. 642, 12 Am. St. Rep. 883); *Dudley*

v. *Odom*, 5 S. C. 131 (22 Am. Rep. 6); *Gardiner* v. *Morse*, 25 Me. 140; *Boyle* v. *Adams*, 50 Minn. 255 (52 N. W. 860, 17 L. R. A. 96); *Camp* v. *Bruce*, 96 Va. 521 (31 S. E. 901, 43 L. R. A. 146, 70 Am. St. Rep. 873).

It is suggested by complainant's counsel that the above rule, rendering void contracts entered into for the purpose of suppressing public competition at sales, does not prevent two persons from combining for honest purposes to purchase property, where such persons propose to hold and own the property together, and afterwards divide it, even though the effect of the purchase happens to be that, as between the parties, competition is suppressed; and there are cases in which parties, in advance of a sale, have joined to become bidders, and which hold that such an agreement is not void, and, if such is the true purpose of the arrangement, courts will sustain the transaction. But we think these cases do not aid the complainant here. Here the bids had already been made, the sale was still open, and a plainer case of attempt to prevent competition could hardly be imagined.

But it is said that this defense was not pleaded. We think such defense need not be pleaded, but that, whenever the court is asked to enforce a contract which, upon the complainant's own showing, is against public policy, the relief will be denied. *Coppell* v. *Hall*, 7 Wall. 542; *Meyer* v. *Farmer*, 36 La. Ann. 785.

The circuit court dismissed the bill, and the decree will be affirmed, with costs.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. GRANT, J., took no part in the decision.