O'GORMAN et al., Appellants, v. JOLLEY, Administrator, et al., Respondents.

(147 N. W. 78.)

1. **Gifts—Delivery, Necessity of.**

To constitute a valid gift of any kind, delivery is essential.

2. **Gifts—Causa Mortis—Revocation—Passing of Title.**

A gift causa mortis is revocable during the life of the donor, and does not pass an irrevocable title until death of donor.

3. **Gifts—Causa Mortis—Intent and Delivery—Defeasance—Revocation—Recovery of Possession.**

In the case of a gift causa mortis, both intent and delivery are accompanied by conditions imposed by law: If danger of death pass without donor dying; if donor revoke the gift before death; or, if donee die before the donor; any one of which conditions may operate as a defeasance of the gift; and held, that, to render a gift causa mortis valid, possession in donee must continue during life of donor, and recovery of possession by the latter is a revocation of the gift.

4. **Gifts—Causa Mortis—Qualified Delivery—Certificate of Deposit.**

Delivery by donor to F. of a certificate of deposit, is a qualified delivery, preventing the necessary present execution of a gift causa mortis, where, by an endorsement on back thereof, signed by donor, a bank issuing the certificate is authorized, in case of donor's death, to pay the deposit to enumerated persons, including F., and directs the certificate to be handed to F. immediately after donor's death.

5. **Trusts—Declaration of Trust—Vesting of Present Estate.**

An indorsement on a certificate of deposit, directing payment, by the bank issuing the certificate, to certain persons in the

event of death of the indorser, cannot be sustained as a declaration of trust in favor of the donees.

(Opinion filed May 4, 1914.)

Appeal from Circuit Court Clay County. Hon. ROBERT B. TRIPP, Judge.

Action by Thomas O'Gorman, trustee, and others against John L. Jolley, administrator, (intervenor), and others, to recover upon a certificate of deposit. From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Lyons & Lyons,* for Appellants.

A bank deposit may be the subject of a gift, and delivery of the certificate of deposit is sufficient to pass the title to the money. 20 Cyc. 1,238; 1244.

The delivery of the certificate of deposit to T. L. Flood vested him with the title to that portion of the money intended for him absolutely, and as trustee for the other beneficiaries. 20 Cyc., 1,232, and cases cited; Grymes v. Hones, 49 N. Y. 20; Edwards v. Jones, 1 Myl. & C., 226; Story's Eq. Jur., 607; 1 Wms. Exrs. 552; Gardner v. Parker, 3 Madd., 184; Jones v. Selby, 24 Eng. Reprint. 143; Miller v. Miller, 24 Eng. Reprint, 463; Blazo v. Cochrane, (N. H.) 53 Atl., 1,026; Williams v. Gile, (N. Y.) 6 L. R. A., 366; Thomas v. Lewis (Va.) 37 Am. St. Rpt., 848; 2 Schouler on Per. Prop., 2d Ed., Chapter 5, Sec. 135.

The expression, 'In case of my death,' or like words, do not of themselves make a testamentary disposition, but merely express the condition which the law annexes to every donatio mortis causa. Ward v. Turner, 1 Lead. Cas. Eq., 1222; Ashbrook v. Ryon, 92 A. D., 491; Grymes v. Hone, 49 N. Y., 17; (Am. Rep., 313.) Cooper v. Burr, 45 Barb. 9; Johnson v. Cooley, (Va.) 99 A. S. R., 884; Redfield on Wills, 2 Ed., 322; 1 Story's Eq. Sec. 616; 3 Pomeroy's Eq. Jur., Sec. 146, and cases cited. Sections 956, 957 Civil Code.

The deposit of this money in the First National Bank of Vermillion in the form in which it was made, constituted the bank a trustee for the beneficiaries named on the back of the certificate; Bispham's Prin. of Eq., page 98; In Re Padhojksky (Ia.) 115 N. W., 590; Devol v. Dye, 7 L. R. A., 459; Ellis v. Secor, 31 Mich., 185; Williams v. Guile, (N. Y.) 6 L. R. A., 366;

Blasdell v. Locke, 52 N. H., 238; Trowell v. Carroway, 10
Heisk., 104; Smith's Estate, 144 Pa., 442; Stone v. Hackett,
12 Gray, 227; Gardner v. Merritt, 3 A. R., 115 (Md.); Ray v.
Simmons (R. I.) 23 A. R., 447; Harris Banking Company
v. Miller et al. (Mo.) 1 L. R. A., (N. S.) 790, and cases cited;
Perry on Trusts, Sec. 82.

The donor constituted herself a trustee, under this certificate.
Wheatley v. Purr, 1 Keen, 551; Ellis v. Secor, 31 Mich. 185;
Dover v. Ney, 125 Mass. 590; Ray v. Simmons, 11 R. I. 266;
Blasdel v. Locke, 52 N. H. 238; Garrish v. New Bedford
Bank, 128 Mass. 159; Ray v. Simmons, (R. I.) 23 A. R. 447;
In re Soulard, (Mo.) 43 S. W. 617; Witherington v. Herring,
(N. C.) 6 A. & E. Annot. Cases 188.

*French & Orvis,* for Intervenor, and Respondent.

Under the facts of this case, Margaret Sullivan did not make
a will.    Basket v. Hassell, administrator, 107 U. S. 602, 27
L. Ed. 500; Gass v. Simpson, (Tenn.) 4 Cold. 288; Hatcher v.
Buford, (Ark.) 29 S. W. 643, 27 L. R. A. 509; Hart v.
Ketchum, (Cal.) 53 Pac. 932; Guinan's Appeal, (Conn.) 39
At. 484; Love v. Francis, (Mich.) 6 Am. St. Rep. 298; 29
N. W. 848; Lyeson v. Davis, (Mont.) 42 Pac. 788, 31 L. R.
A. 445; Emery v. Clough, (N. H.) 56 Am. Rep. 545, 4 At.
799; Ridden v. Thrall, (N. Y.) 21 Am. St. Rep. 762, 26 N. E.
629, 11 L. R. A. 688 and note; Seybold v. Bank (N. D.) 67
N. W. 685; Williams v. Chamberlain, (Ill.) 46 N. E 252;
Donnell v. Wylie, (Me.) 26 At. 1094; Yancey v. Field, (Va.)
8 S. E. 722; Barker v. Buhre, (Wis.) 21 N. W. 615; Logenfiel
v. Richter, (Minn.) 61 N. W. 828; Walsh's Appeal, (P.) 15
At. 471, 9 Am. St. Rep. 85; Dunn v. German etc. Bank, (Mo.)
18 S. W. 1140.

In every gift causa mortis the donor must part with all
dominion over the property, so that no further act is required
of him or his personal representative to vest the title perfectly
in the donee if it be not reclaimed by the donor during his life.
If the possession of the donee does not continue the gift is at
an end.    He must take and retain possession until the donor's
death.    20 Cyc. 1232, 1243, 1245; Dunbar v. Dunbar, (Me.)
Atl. 578; Hatch v. Atkinson (Me.) 96 Am. Dec. 464; Craig
v. Craig, 3 Barb. Chancery 76; Secs. 1146, 1148, 1149, 3 Pom.

Eq. Jur.; Harris v. Clark, 3 (N. Y.) 93, 51 Am. Dec. 352; Noble v. Smith, 2 Johns. 56, 3 Am. Dec. 399, Kent, C. J.

SMITH, P. J. This appeal involves the validity of certain alleged gifts *causa mortis*. The facts disclosed by the record are substantially as follows:

On June 2, 1911, one Margaret Sullivan, an aged woman residing in the city of Vermillion, was in poor health, resulting from an acute attack of pneumonia, which had left her in a feeble condition. She then had $4000 in cash, which she caused to be deposited in the First National Bank of Vermillion, and received therefor a certificate of deposit, containing the recital: "Payable as per instruction on back of this certificate. * * * Payable after date with 4% interest per annum, semi- annually, not subject to check." On the back of the certificate was pasted an instrument in the following words: "This certificate and the interest thereon, is my property during the remainder of my life. In the event of my death, I hereby authorize and instruct the First National Bank of Vermillion, S. D., to pay and distribute the amount of said certificate of deposit as follows:" Then follow the names of fifteen persons to whom payments are to be made in various amounts set opposite their names respectively, aggregating the sum of $4000. * * * "I direct that the certificate be handed to Father Flood, immediately after my death, and the above conditions be fulfilled."

The circumstance under which this instrument was executed as disclosed by the record, are substantially as follows: Margaret Sullivan was a member of the Catholic church, and at her request, Father Flood, her spiritual advisor, visited her on the afternoon of June 2, 1911. The matters discussed between them, are not disclosed by the record. Immediately thereafter, Father Flood went to the office of Col. Jolley, an attorney in the city of Vermillion. What occurred there is not disclosed. From the law office, he went to the First National Bank of Vermillion, where he had a conversation with Mr. Inman, President of the bank, who drew up the certificate of deposit. Mr. Hart, vice president of the bank, under the direction of Mr. Inman, in the presence of Father Flood, and partly at his dictation, wrote out on the typewriter, the endorsement above recited, which was pasted on the back of the certificate of deposit. Another writing, Exhibit B.,

was prepared at the same time, and attached to the certificate of deposit. This writing related to the disposition to be made of certain sums set opposite the names of two persons named in the endorsement on the back of the certificate, and is immaterial to any question presented on this appeal. Upon these two instruments being prepared, Mr. Inman and Father Flood went to the home of Margaret Sullivan, where they remained some three-quarters of an hour, or an hour. What was said between them is not disclosed by the record. At that time Margaret Sullivan signed the instrument pasted on the back of the certificate of deposit. Father Flood took the certificate away with him, and kept it three or four days, or possibly a week, and then, at the request of Margaret Sullivan, returned and delivered it to her. She exhibited it to her nurse Ida McGrath, who. after conversation as to certain of the amounts named on the back of the certificate, took it and deposited it in a tin box belonging to Margaret Sullivan, locked the box, and retained the key in her possession until after the death of Margaret Sullivan, on July 4, 1911. After the death of Margaret Sullivan, and on the same day, Mrs. McGrath handed the certificate to Father Flood, who retained it for three or four days, and then placed it in the First National Bank of Vermillion. Col. Jolley named as one of the donees, declined to accept the proposed donation, and thereafter, upon application to the probate court of Clay County, was duly appointed and qualified as administrator of the estate of Margaret Sullivan.

The plaintiffs, who are appellants here, and are named as donees on the back of the certificate, began this action against the First National Bank of Vermillion, to recover the amount remaining unpaid on the certificate, whereupon Col. Jolley, as administrator, filed a petition in intervention, claiming the funds as the estate of Margaret Sullivan, deceased, and asked and was granted leave to intervene and defend in behalf of the estate. Prior to the complaint in intervention, the administrator demanded of the First National Bank, possession of the certificate of deposit, which was refused. Findings and conclusions of law were made favorable to the intervenor Jolley, as administrator, and by the judgment, he was awarded possession of the certificate of deposit, and an order was made that the First National Bank pay to him, as administrator, the money on deposit. From this judgment, and an

order overruling motion for a new trial, plaintiffs appeal. Appellants assign first: Error of law occurring at the trial. Second: Insufficiency of the evidence to sustain the findings of fact, conclusions of law and judgment. Third: That the findings of fact. and conclusions of law and judgment are against the law.

The first eight assignments are upon rulings of the trial court, on matters of evidence. A careful examination of the record, satisfies us that the court committed no reversible error in any of these rulings, and none of them, we think, is of sufficient general importance to require discussion. The ninth assignment is that there is no evidence to sustain the trial court's finding numbered seven. The specifications of insufficiency are, that there is "no evidence tending to prove that Margaret Sullivan did not give to the plaintiffs, the sum of $4000 on deposit in the defendant bank, and that Margaret Sullivan did deliver to this plaintiff an instrument whereby she assigned to them the sum of $4000 on deposit in the First National Bank of Vermillion; further, that the evidence shows that the certificate of deposit described in the findings of fact, was delivered by the said Margaret Sullivan, to T. L. Flood, to be held in trust by him, for the plaintiffs, and that T. L. Flood accepted the gift of $4000 from the said Margaret Sullivan, for himself, and on behalf of the other plaintiffs in the action; that the undisputed evidence shows that the certificate of deposit was delivered to Father Flood in trust for plaintiffs, and by him handed to Mrs. McGrath, and kept in a tin box belonging to Mrs. McGrath, who at all times retained and had absolute control of the said box."

The finding of fact referred to, is in substance, that the certificate of deposit was never delivered by Margaret Sullivan to T. L. Flood,, or to D. M. Inman, President of the First National Bank of Vermillion, or to any of the plaintiffs in this action, during the lifetime of said Margaret Sullivan, and that she did not deliver to said plaintiffs or any of them, any instrument whereby she assigned to them or any of them, the money on deposit in the bank.

The conclusion of law is that Margaret Sullivan did not make a valid gift of the money in the bank evidenced by the certificate of deposit, but that the certificate and the money represented ther-

by, was her property at the time of her death, and now belongs to her estate.

These specifications undoubtedly refer to the matters contained in finding of fact numbered three, and should be considered in connection with that finding, which is as follows: "That said certificate of deposit with the endosement thereon by said Margaret Sullivan, as kept by T. L. Flood for about two or three days after the same was issued, and he then placed it in the hands of one Mrs. McGrath, who was taking care of said Margaret Sullivan at her residence, and said Mrs. McGrath thereupon placed said certificate of deposit in a tin box belonging to said Margaret Sullivan, and locked said box, she, said Mrs. McGrath, retaining the key to said tin box at all times thereafter until the death of said Margaret Sullivan, which occurred on or about the 4th day of July, 1912, and a few days after the death of said Margaret Sullivan said Mrs. McGrath placed said certificate of deposit in possession of T. L. Flood, who took the same to the First National Bank of Vermillion and left it with said bank, and the same has ever since been in the possession of said bank."

Appellants in their brief, admit and the undisputed evidence is, that the certificate was returned to Mrs. Sullivan's home by Father Flood, at her request. It was thus subject to her control. And the testimony of Father Flood is that he delivered it to Margaret Sullivan, personally.

Appellants' contention that the findings are not sustained by the evidence in the record, is clearly wrong, except as above noted. It is sustained not only by a preponderance of the evidence, but by evidence which is practically undisputed.

[1] The real question is, whether the findings sustain the conclusions of law, to-wit: That the facts are insufficient in law to sustain the alleged gift *causa mortis.*

Appellants contend that the facts support two legal theories, under either of which they are entitled to a reversal of the judgment. First: That Margaret Sullivan made a valid gift *causa mortis,* by executing the instruments in evidence as Exhibits "A & B," and delivering them to T. L. Flood. Second: That the endorsement on Exhibit "A" made the bank a trustee for the beneficiaries named on the back of the certificate. It may be conceded that a bank deposit may be the subject of a gift, and that

delivery of a certificate of deposit therefor, may be sufficient to pass title to the money it represents. But the rule has no application unless the delivery of the certificate of deposit is such as would constitute a valid delivery of the money itself. In other words, suppose the money had been enclosed in an envelope upon which was pasted the identical instrument pasted upon the certificate of deposit; that this envelope with its contents, had been taken and retained by Father Flood, and returned by him upon request of Margaret Sullivan, exactly as was done with the certificate of deposit, and that Margaret Sullivan had resumed possession thereof until after her death, would such a delivery vest title in T. L. Flood, as a donee?

Gifts are said to be of five kinds. First: absolute to the donee. Second, to one for delivery to another. Third, to one as a trustee. Fourth, *inter vivos,* and Fifth, *causa mortis.* Flaherty v. O'Conner, 24 R. I. 587, 54 Atl. 376. To constitute a valid gift of either kind, there must be a delivery of the property to the donee. A gift is said to be a contract executed. The act of execution is the delivery of possession. Without delivery, it is only a contract to give, and not binding for want of a consideration. Scott v. Lauman, 104 Pa. 593; Clapper v. Frederick, 199 Pa. 609 49 Atl. 218; Crouse v. Judson, 41 Misc. Rep. 338, 84 N. Y. Supp. 755; Commonwealth v. Williams, 6 Gray 72 Mass., 1; Spoonders Adm. v. Hilbish ex rel, 92 Va. 333, 23 S. E. 751; Appeal of Colburn, 74 Conn. 463, 51 Atl. 139, 92 Am. St. Rep. 231.

As the act of execution is delivery of possession, it is said to be of the essence of title. In re Schields estate 179 Pa. 308, 36 Atl. 181; In re Campbell's estate, 7 Pa. 100, 47 Am. Dec. 503.

Delivery is essential, whether the gift be *inter vivos* or *causa mortis.* Without legal delivery, the title does not pass. Dickerschied v. Exchange Bank, 28 W. Va. 340.

[2-4] The vital distinction between the gift *inter vivos* and a gift *causa mortis,* is that the latter is liable to revocation by the donor, and does not pass an irrevocable title until the death of the donor, while a gift *inter vivos* vests an irrevocable title on delivery. Partridge v. Kearns, 32 App. Div. 483, 53 N. Y. Supp. 154. A gift *causa mortis* is a gift in contemplation of approaching death, the intent accompanied by delivery.

Both the intent and the delivery are accompanied by conditions imposed by law, any one of which may operate as a defeasance of the gift:    First, if the danger of death pass without the donor dying: Second, if the donor revokes the gift before death: Third, if the donee die before the donor. Seabright v. Seabright, 28 W. Va. 412, 470: Kiff v. Weaver. 94 N. C. 274, 55 Am. Rep. 601. Such gifts are always revocable during the life of the donor.   Biebers Adm. v. Boackman, 70 Mo. App. 503; In re Seitz's estate, 17 App. Div. 1, 44 N. Y. Supp. 836; Bigford v. Mattocks, 95 Me. 547, 50 Atl. 894; Basket v. Hassell, 107 U. S. 602; 2 Sup. Ct. 415; 27 L. Ed. 500; Gale v. Drake, 51 N. H. 78.   To render a gift *causa mortis* valid, possession must continue during the life of the donor, for recovery of possession by the latter is a revocation of the gift.

It may be assumed that when Father Flood took with him the certificate of deposit, on the day Margaret Sullivan signed the endorsement, he did so with her assent.   The record, however, conclusively shows, that within a week thereafter, she requested the return of the certificate, and it was returned to her and remained in her possession until after her death.   Her intent to recall the delivery, if it was made with her consent, will be presumed from such request, and this presumption is so greatly strengthened as to become a certainty when considered in connection with her written declaration on the back of the certificate that: "I direct that the certificate be handed to Father Flood *immediately after my death*." * * * It is clear from this statement that she did not intend to surrender possession of the certificate or the money it represented, until after her death.

The case of Basket v. Hassel supra, presents facts strikingly similar to those in the present case. In that case, one Chaney deposited in Evansville National Bank $23,514.70 and received a certificate of deposit payable to himself, on surrender of the certificate properly endorsed, with interest at six per cent per annum, if left for six months.   During his illness, and while in apprehension of death, he made the following endorsement thereon: "Pay to Martin Basket, Henderson, Kentucky, no one else; then not till my death; my life seems to be uncertain.   I may live through this spell, then I will tend to it myself."   The certificate with the endorsement thereon, *was delivered to Basket, who retained pos-*

*session thereof until Chaney's death.* Hassel as administrator of Chaney's estate, claimed the fund, and the sole question in the case, was whether the money belonged to Basket, as a donee *causa mortis,* or to the administrator of Chaney's estate.

The Supreme Court of the United States, after a somewhat extended discussion of the law and decisions relating to gifts, *causa mortis,* reaches the conclusion that:

"The application of these principles to the circumstances of the present case, requires the conclusion that the appellant acquired no title to the fund in controversy by the endorsement and delivery of the certificate of deposit. * * * The endorsement which accompanied the delivery qualified it, and limited and restrained the authority of the donee in the collection of the money, so as to forbid its payment until the donor's death. The property in the fund did not presently pass, but remained in the donor and the donee was excluded from its possession and control during the life of the donor. That qualification of the right which would have belonged to him if he had become the present owner of the fund, establishes that there was no delivery of possession according to the terms of the instrument, and that as the gift was to take effect only upon the death of the donor, it was not a present executed gift *causa mortis,* but a testamentary."

The court held that because of this endorsement, the gift was not executed by delivery of the certificate of deposit in the lifetime of the deceased. The principles laid down in this and other cases cited above, are controlling and decisive upon this question.

[5] Appellant's further contention that the written endorsement on the certificate of deposit should be deemed a declaration of trust in favor of the donees cannot be sustained for the reason that the instrument vests no present interest or estate in the donees.

In Norway Savings Bank v. Merriam, 88 Me. 146, 33 Atl. 840, the court said that:

"Nor will courts enforce as a trust a transaction which was intended as a gift, but it is imperfect for that purpose. * * * The only important difference between a gift and a voluntary trust, is that in the one case, the whole title, legal as well as equitable, the thing itself, passes to the donee, while in the other, the actual beneficial or equitable title passes to the cestui que trust, while

the legal title is transferred to a third person or is retained by the person creating it, to hold for the purposes of the trust. But a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust, as is the gift of the thing itself in a gift *inter vivos*."

In Wadd v. Hazelton, 137 N. Y. 215, 33 N. E. 143 21 L. R. A. 693, 33 Am. St. Rep. 707, the court speaking by Peckham, J. said:

"An intention to give, evidenced by a writing, may fail because no delivery is proved, and where an intention to give absolutely is evidenced by a writing which fails because of its nondelivery, the court will not and cannot give effect to an intended absolute gift by construing it to be a declaration of trust and valid therefore, without a delivery."

In Clay v. Layton, 134 Mich. 317, 96 N. W. 458, the court quoting with approval from an English case, said:

"If the settlement is intended to be effectuated by a gift, the court will not give effect to it by construing it as a trust. If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust."

In that case one Whitney, executed and had in his possession at the time of his decease, a written instrument addressed to one Frank W. Clay, in which he said:

"I have instructed Mrs. Friday, in case of my death, to take the keys to my boxes, and not allow any one else to have them, until she and yourself or Rial, look over the papers, and distribute them to those who have assignments made to them, and as far as it is possible, have them recorded and pay for the same and write or send the paper to them, telling them the nature of the transfer to them; and any surplus, divide it as I have instructed you to do in another paper * * * and you are authorized to carry out these provisions the same as though I had done it myself, or was alive to do it, and I hereby authorize you as my attorney, to execute my will in these matters."

The contest was between the administrator of the deceased's estate and the persons named as donees. The question discussed by the court was whether this declaration of the deceased consti-

tuted a trust in favor of persons named as donees. The court said:

"There is not any evidence of a trust in these papers. On the contrary, it seems plain that the deceased proposed to keep them until he died. The letters contained in envelopes A. B. & C. do not indicate that the deceased supposed that he held this property in trust. On the contrary, they direct distribution after death. * * * This is cogent evidence that he proposed to keep control of his estate during life."

The court held as stated in the syllabus:

"One who having so arranged his property in anticipation of death, that delivery of the papers according to written instruction is all that is required to be done to distribute it, still retains possesion of the papers and property, will not be held to have created a trust for the beneficiaries, where there is nothing in his acts or instructions which indicates an intention that effect shall be given to the papers before his death."

In O'Neill v. Grenwood, 106 Mich. 579, 64 N. W. 513, the court said:

"In order to create a trust in the donor, a mere intention or promise to give *in futuro* is insufficient. There must be an act, or series of acts, *which divest the donor of the equitable ownership, and vest such ownership in the donee.*" The italics are our own. In this case, the evidence disclosed an express oral declaration of trust by the decedent, which distinguishes it from Clay v. Layton, supra.

In Garvin v. De Miranda, 76 Hun 414, 27 N. Y. Supp. 1049, it was held that the signing and acknowledgement of a declaration of trust without placing the evidence thereof in the custody of another is insufficient to create a trust.

In the case at bar, it is entirely clear that no present beneficial interest or equitable estate in the funds on deposit in the First National Bank of Vermillion, was vested in the donees during the lifetime of Margaret Sullivan, nor was any interest intended to vest in them, until after her death. On the contrary, her express declaration is: "This certificate and the interest thereon, is my property during the remainder of my life." In the creation of a trust, the legal title may remain in the trustor or may be transferred to a trustee, but to constitute a valid trust, the beneficial or

equitable estate, must be irrevocably vested in the cestui qui trust by the instrument or declaration creating the trust. The instrument executed by Margaret Sullivan was testamentary in character, and not a declaration of trust. It seems to be generally held that an instrument in the nature of a testamentary disposition of property which must be proved in a court of probate, but which is so imperfectly executed that it cannot be proved as a last will and testament, will not create a trust in favor of donees named therein. This rule has perhaps been somewhat relaxed in its application in particular cases. Fisher v. Hampton Transportation Co. 136 Mich. 218, 98 N. W. 1012, 112 Amer. Stat. Rep. 358; Bryan v. Bigelow, 77 Conn. 604, 60 Atl. 266, 107 Amer. St. Rep. 64; Payton v. Almy, 17 R. I. 605, 24 Atl. 101; Dougherty v. Shillingsburg, 175 Pa. St. 56, 34 Atl. 349. The essential difference between a trust instrument and a will, is that the former at once, vests an interest or estate in the beneficiaries, although the enjoyment thereof, may be postponed until after the death of the trustor, but a will cannot take effect until the death of the testator, and until that time, vests no interest or estate in the beneficiaries. The distinction between the two instruments is well stated in Nichols v. Emery, 109 Cal. 323, 41 Pac. 1089 50 Amer. St. Rep. 43, where it is said:

"The essential characteristic of an instrument testamentary in its nature is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate and *per contra* no rights have accrued to and no estate has vested in any other person. The death of the maker establishes for the first time, the character of the instrument. * * * Upon the other hand, to the creation of a valid express trust, it is essential that some estate or interest should be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately. * * * But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and to depend for its commencement upon the termination of an existing life or lives or of an intermediate estate.'

A careful consideration of the questions presented on this appeal, convinces us that the findings, conclusions and judgment of the trial court are correct, and must be affirmed.