199     609
23 SC ¹205

## Clapper *v.* Frederick.    Clapper *v.* Fluck.

*Gift—Promissory notes—Delivery.*

Without a complete delivery during the lifetime of the donor there can be no valid gift inter vivos. Though every other step be taken that is essential to the validity of the gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails regardless of consequence.

Where a woman whose two brothers are indebted to her on promissory notes, directs her brothers to deduct a certain amount from their respective debts, and to make several new notes of smaller amounts for the balance, payable to certain nephews and nieces, and directs one of her brothers who has charge of her other papers, to keep these notes, but gives no direction as to delivery, and does not inform the nephews and nieces of the existence of the notes, and after the death of her brother, directs another person to take charge of the notes without setting any time for their delivery, the nephews and nieces to whom the notes were made payable, cannot, after the death of their aunt, claim title to the notes, as the evidence of delivery is insufficient to establish a valid gift.

Argued May 13, 1901. Appeal, Nos. 171 and 172, Jan. T., 1900, by defendants, from judgment of C. P. Bedford Co., Dec. T., 1899, Nos. 42 and 43, on verdict for plaintiff in suits of Nathaniel Clapper, Administrator of Elizabeth Clapper, Deceased, v. Adam Frederick, and John B. Fluck, Executors of Daniel Stayer, Deceased, and against John B. Fluck and Jacob Koontz, Executors of John Stayer, Deceased. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on promissory notes. Before LONGENECKER, P. J.

At the trial the court directed a verdict in favor of plaintiff subject to the following question reserved:

There is not any evidence in this case to be submitted to the

jury, upon which the plaintiff is entitled to recover, and the jury must therefore render a verdict for the defendant.

Verdict in the first case for $1,942, and in the second case for $1,806.32.

LONGENECKER, P. J., filed the following opinion on a motion for judgment non obstante veredicto.

Elizabeth Clapper's maiden name was Stayer. She was a sister of John Stayer and Daniel Stayer, the defendants' decedents, and had an individual estate in personalty, derived from her father, amounting to something over $6,000. Of that amount she had $2,546.83 invested in the hands of her brother, John Stayer, on November 12, 1894, and $2,621.96 in the hands of her brother, Daniel Stayer, for which she held their notes. At an advanced period in life she married Henry Clapper, whose former wife had died leaving children, one of whom is the plaintiff in these cases. There were no children of the second marriage, but Elizabeth Clapper had a number of nephews and nieces. She and her husband were growing quite old when, on November 12, 1894, she met her two brothers by arrangement at the house of John Stayer in company with John B. Fluck, Esq., and after the two notes of the brothers were produced and calculations made by Fluck, showing the amount due thereon, she deducted from each the sum of $844.79, and took from them, for the balances, a number of notes in smaller sums, given in the names of her relatives, which were made payable in four years with interest at three per centum for the last year only. The original indebtedness of each brother was canceled to the extent of $844.79 by a gift of that sum, and on the trial we held the respective debts relinquished and discharged for a corresponding amount as of November 12, 1894.

When the new notes were given the payees named therein were not present and they never had possession of them in the lifetime of Elizabeth Clapper, nor were any of them paid since. It is clear and not disputed that she intended to make gifts of the sums represented by these notes to the payees, but there was no delivery to the intended donees until after her death. When executed she placed the notes in the hands of her brother, Daniel, one of the makers, without any explicit instructions as to the time of their delivery. Of the four persons

present at that time, only two lived to testify in regard to the transactions on November 12, 1894, and in reference to the disposition of the notes, namely, John B. Fluck, Esq., and John Stayer. Their testimony shows that Daniel had been attending to his sister's business and had charge of her papers prior to that meeting, and had custody of his own note to her and that of his brother, John; that she handed these notes to him with directions to deliver them to the donees, but without any instructions as to the time when that should be done. Fluck says, " There was no times fixed as to when they should be distributed." John Stayer says, " He (Daniel) was to keep them and keep them safe." Being asked, " What was Daniel to do with those notes that you gave that day ? " he replied, " He was to deliver them to who they were given to." The evidence upon the question as to the time when it was contemplated delivery of the notes should be made is not very clear, but it is manifest that Daniel did not understand that an immediate delivery was intended, for he placed them with her other notes in his possession and retained them until he died. His death occurred before that of his sister. Rinehart Stayer, a nephew, was then requested by Mrs. Clapper to take charge of these notes. He received and held them until after her death, which took place May 11, 1896. He says he took them to his home and cared for them and never opened them until after she died ; that he was to deliver them but no time was set. Whatever may have been her intention with regard to the time when the notes should be given to the donees when she placed them in the hands of her brother, it is somewhat remarkable, if she designed an immediate delivery, that she again put them in charge of Rinehart Stayer without any specific directions on the subject, after Daniel had held them a year without turning them over.

She had previously made a will in which she made substantially the same disposition of her estate, but was advised that she could not make a testamentary distribution of her property which would deprive her husband of his rights under the law, and so she adopted this method. She stated she did not intend the Clappers should have her estate after she was gone. The theory of the plaintiff is that she did not desire the arrangement made on November 12, 1894, to become known to her

husband until after her death in case he should survive her, and in case she survived him the notes would be still in her control for her use or any other disposition she might prefer. Henry Clapper, the husband, did survive her about a year, when he died May 18, 1897. Now his son, as the administrator of Elizabeth Clapper, seeks to recover for the estate of his father from the estates of John Stayer and Daniel Stayer, now also deceased, the sums owing by them respectively on their notes to their sister, alleging there was no such delivery of the notes given November 12, 1894, as could vest title in the intended donees. The two cases were tried together.

We expressed pretty fully our views on the legal questions involved, in our instructions to the jury, leaving for consideration on the pending motions for judgment in favor of the defendants non obstante veredicto merely the question whether there is any proof of delivery which would warrant a jury in finding that the transactions mentioned divested the title of Mrs. Clapper to the notes and the debts represented thereby and vested the same in the parties named in them. In other words, were they complete and perfect gifts? If not, the marital rights of the husband could not, of course, be defeated, nor could the legal representatives of his estate be deprived of the fund.

To make valid gifts there must have been, not only an intention to make them, but to do so at the time and not in the future, attended by an actual or constructive delivery to the donees, by which the donor released all dominion over the funds and invested the donees with her full title to and control over the same. The evidence does not show that intended donees knew of the making of these notes, yet an acceptance might be presumed if there were any proof that either Daniel Stayer or Rinehart Stayer had acted in the premises as their agent. But in each instance the party was at the time the custodian of her other papers. There is no proof that she constituted them the agents of the defendants, and in absence of such proof they must be presumed to have acted as her agents: Thornton on Gifts and Advancements, page 94; Scott v. Lauman, 104 Pa. 593; 14 Am. & Eng. Ency. of Law (2d ed.), p. 1025.

If the gift inter vivos be delivered to a third person for the

donee, with authority to deliver it to the latter, then until the authority is executed and the article delivered, such depositary is the agent of the donor and the latter may revoke the gift and reclaim the property; Sessions v. Moseley, 4 Cush. (Mass.) 87; Dickeschied v. Exchange Bank, 28 W. Va. 340. If the depositary is the agent of the donor, the death of the latter revokes the agency and no delivery thereafter is valid: Thornton on Gifts, etc., p. 94.

Without a complete delivery during the lifetime of the donor there can be no valid gift inter vivos. " Though every other step be taken that is essential to the validity of the gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of consequence:" Thornton on Gifts, etc., p. 105.

A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It is a voluntary transfer of a chattel, completed by the delivery of possession. It is the fact of delivery which converts the unexecuted purpose into an executed and irrevocable gift; by which a present and irrevocable title vests in the donee: Flanagan v. Nash, 185 Pa. 45.

" The test of delivery is the change of property, the immediate right to entire dominion over the subject of the gift, a perfect title, which is as good against the donor as any one else:" Thornton on Gifts, etc., p. 110.

Without any further act on part of the donor or the depositaries in our case than has been shown, could the donees have sued for and recovered the notes? If the donor, or even the depositaries, had informed the donees of what had been done and they had, by any acts or by agreement, constituted the depositaries their agents, a delivery might be inferred, but unfortunately we have no proof that the donees ever learned of the intended gifts until after Mrs. Clapper's death.

The burden is on the donee to show there was a valid gift (Thornton on Gifts, etc., pp. 185, 189), and this must be construed to require from the donee proof of every essential element of a perfect gift, including agency, where that is a disputed fact. If the evidence were conflicting it would necessarily be a question for the jury, but here we have no contradiction, and it be-

comes a question of law whether, assuming as true all that has been shown in the direction of a delivery of the notes to the depositaries as agents for the donees, there is such proof of the fact as would support a verdict. After the death of the donor the proof of a gift should be clear: Appeals of Fross and Loomis, 105 Pa. 258.

The mere fact that the notes were drawn in the names of the proposed donees, without actual delivery to them or proof that they passed into the hands of the depositary for that purpose, and that immediate gifts were contemplated, did not divest the title of the donor, but her dominion over the notes and the fund continued: Scott v. Lauman, 104 Pa. 593, supra, and the case therein cited.

If it was intended, as the plaintiff contends, that the notes should not be delivered until after Mrs. Clapper's death, the intended gifts necessarily failed, and delivery thereafter was unavailing: Trough's Est., 75 Pa. 115.

While the witnesses say the notes were given to Daniel Stayer for delivery to the donees, they also say no time was mentioned when it should be done, and taking this in connection with the conduct of Daniel Stayer in the premises, and the further statement of John Stayer that Daniel Stayer "was to keep them and keep them safe," together with the statement of Rinehart Stayer that he "was to handle them as Daniel had," and the fact that the donees were kept in ignorance of the transactions until after the death of the donor, it tends to refute the intention of an immediate delivery and a present gift.

If we could satisfy our mind that these could be sustained as perfect gifts our inclination would certainly be to so hold them, and thus secure the money in controversy to the kindred of Mrs. Clapper, to the side of the house from which it came, but the burden of establishing the essentials of gifts being on the defendants, and feeling that, under the rules of law, they have failed in this, and that we could not have sustained verdicts if rendered in their favor, we do not feel at liberty to disturb those taken at the trial.

And now, April 12, 1900, the reserved point is refused and the motion for judgment for the defendants non obstante veredicto is overruled in each case, and it is ordered that judgment be entered for the plaintiff in each case according to the verdict.

Same day, an exception to the foregoing opinion and order, in each case, is noted on behalf of the plaintiffs and bills are sealed accordingly.

*Error assigned* was in entering judgment on the verdict.

*John H. Jordan,* with him *E. F. Kerr* and *R. C. McNamara,* for appellants, cited: Licey v. Licey, 7 Pa. 252; Albert v. Ziegler, 29 Pa. 58; Bond v. Bunting, 78 Pa. 218; Kulp v. March, 181 Pa. 630.

*John M. Reynolds,* with him *Frank E. Colvin,* for appellee.

PER CURIAM, May 27, 1901:

The judgment is affirmed on the opinion of the court below.