Ream Estate.

Argued January 16, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Rank Bickel, Jr.,* for appellant.

*L. E. Meyer*, with him *Meyer, Brubaker & Whitman*, for appellee.

OPINION BY MR. JUSTICE JONES, March 17, 1964:

Emma Ream (decedent), a Lebanon County resident, died, testate, on February 3, 1961. Approximately one year later, her executor filed his first and final account in the Orphans' Court of Lebanon County. Raymond Ream, a non-relative of decedent,[1] excepted to this account claiming that a 1957 Cadillac automobile and $4015 in cash—listed in the account as estate items—were given, as gifts causa mortis, to him by decedent.

To take testimony on these exceptions, the Orphans' Court of Lebanon County appointed an auditor who, after a hearing, concluded that the automobile and the cash belonged to the estate and had not been the subjects of gifts causa mortis to Ream. The court affirmed the auditor's conclusion and dismissed Ream's exceptions. From that decree Ream appeals.

It requires no citation of authority that to establish a gift causa mortis it must be proved that, at the time of the alleged gift, the decedent *then* intended to make a gift, that decedent apprehended death, that the res of the intended gift was either actually or constructively delivered, and that death had actually occurred. It is equally well settled that (a) the burden is upon the gift-claimant to prove, by "clear, direct, precise and convincing" evidence, the requisite elements of a gift causa mortis and (b) that whether the evidence as to the gift satisfies the required standard of proof is a question of law for the court (*Sivak Estate*, 409 Pa. 261, 265, 266, 185 A. 2d 778).

---

[1] Ream lived with decedent for upwards of 30 years, occupied the same bedroom, drove decedent's car, and, in later years, took care of the house and nursed decedent.

The court below was of the opinion that Ream had failed to sustain his burden of proof as to both alleged gifts, the evidence being "equivocal". Our inquiry is whether the evidence on this record measures up to the standard necessary to prove gifts causa mortis of the automobile and/or the cash or both.

Our review of the record reveals that, if the evidence does indicate that gifts of the automobile and/or cash or both were made, the requirement that at that time decedent must have been under apprehension of death has been met. In this connection this Court has stated in *Titusville Trust Co. v. Johnson,* 375 Pa. 493, 498, 100 A. 2d 93: ". . . it is not necessary that the donor who is sick or ill or injured expressly say that he knows or believes he is dying—that may be inferred from the attendant circumstances. It will suffice if at the time the gift was made, the donor believed he was going to die, that he was likely to die soon; and death did actually ensue within a reasonable time thereafter. The question depends primarily upon the state of the donor's mind. In passing upon this question all the attendant circumstances should be considered, including the nature and extent of his sickness, illness or injuries, his physical condition, his conduct, and anything that was said to and by him." Taking into consideration the attendant circumstances herein presented, we believe that decedent did apprehend death sufficiently to satisfy this requirement in proof of a gift causa mortis. Such fact and the fact of decedent's death satisfy two of the necessary requisites to establish a gift causa mortis.

Did the decedent intend then to make a gift of the automobile and the cash and, if so, did she effectively make a delivery thereof to Ream? The resolution of both questions depends upon the testimony of record and whether such testimony meets the necessary standard of proof.

The record indicates that decedent went to a justice of the peace with the title to the automobile, that she said she had her title with her, that she further said "I would like to arrange for [Ream] to have this car, but I don't want it in his name yet, so long as he drives me", "I want him to have this car", "I don't want it in my estate, because my daughter don't like him" and that decedent then executed the assignment in the presence of the justice of the peace,[2] although she did not put Ream's name on the assignment. The justice of the peace was asked: "Q. And you say that [decedent] asked you to fix the title so that [Ream] could have it after her death?" and the response was: "A. Right, that was her desire". A neighbor-tenant of decedent testified decedent had told her "more than once that she wanted [Ream] to have the car . . . ." A friend of decedent for over 40 years testified that decedent in her driveway had said: "Well, this [the automobile] is [Ream's] . . . It's the last one I will ever buy, and he will have something nice when I am not here". There can be no doubt that the automobile was in the garage at the residence of decedent, that the keys and certificate of title were in Ream's possession, the certificate itself being in Ream's closet. After decedent's death, Ream turned over the car and keys to a garageman who, in turn, delivered them to the executor.

Determination of the existence of the necessary donative intent and delivery must depend on the facts of each particular case. The instant record indicates that decedent fully intended that the automobile belong to Ream upon her death and the fact that the key and title were in Ream's possession, together with the

---

[2] The auditor found that decedent *did not* sign the assignment of title. Such finding lacks the necessary supporting evidence. The executor who saw the title could only say he *didn't think* decedent's signature was on the assignment.

other attendant circumstances, point to a delivery of the automobile in the only manner in which such property was capable of being delivered. The evidence points clearly to the conclusion that the decedent did make a gift causa mortis to Ream of the automobile and that such automobile should not have been included in the account as an asset of decedent's estate.

As to the cash found in a compartment on the top of a dresser in the bedroom occupied jointly by decedent and Ream, there is no doubt that Ream knew of the existence of that money because he told the executor where it was located and personally turned it over to the executor.

There was testimony that decedent had told a neighbor that she wanted Ream to have "what money would be left in the house", that she told a longtime friend "that there would be money in the house and whatever money is in the house was meant for [Ream]", that she told her niece "The money that is in the house belongs to [Ream]", that "she had four thousand dollars put away for [Ream]" and, when the niece asked whether Ream knew where it was, decedent answered in the affirmative. There is no competent testimony to prove the delivery of this money, either actually or constructively, by decedent to Ream. Under the circumstances, Ream has failed to sustain his burden of proving, by the requisite evidence, that the cash was the subject of a gift causa mortis to him.

We believe that the testimony fully supports a finding that the automobile was given by decedent to Ream but does not support a finding that the cash was given to him.

Decree, as modified, affirmed. Costs on estate.