Jervis Will.

Argued January 8, 1971. Before Bell, C. J., Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Philip R. Detwiler,* with him *Butera and Detwiler,* for appellant.

*J. Brooke Aker,* with him *Smith, Aker, Grossman & Hollinger,* for appellees.

Opinion by Mr. Justice Jones, June 28, 1971:

When Alexander Jervis (decedent) died on June 25, 1969, he was survived by three children, Robert Jervis, Mary Duncan and Arthur Jervis (appellant). On October 8, 1968, while a guest at a rest home, decedent executed a will, the validity of which is now attacked.[1]

---

[1] Prior to October 8, 1968, decedent had executed other testamentary writings—January 25, 1961 (will), October 17, 1961 (will), January 16, 1963 (codicil), March 29, 1963 (will), and February 13, 1964 (will). The January 1961 will left decedent's estate to his then wife, Margaret Jervis; the October 1961 will left his estate in trust to pay the income for life to his then wife, Gladys Jervis, with remainder over upon her death to decedent's three children or their issue; the codicil to the October 1961 will provided specific gifts of personal property, such as household effects, etc., to his three children; the March 1963 will, after reciting decedent's belief that a post-nuptial agreement with Gladys Jervis was invalid, made certain specific gifts of personal property, such as household effects, to his children and certain grandchildren and gave one-third of the remainder of his estate to his wife, Gladys Jervis, and the remaining two-thirds to his three children equally;

Under the terms of the challenged will, after reciting that he (the decedent) had made an inter vivos distribution of his "tangible personal property," decedent distributed his estate in the following manner: one-third (1/3) to Robert absolutely; one-third (1/3) to Mary Duncan absolutely; and the other one-third (1/3) to be divided into thirds with each third representing one-ninth (1/9) of the entire estate and, of this, one-ninth (1/9) was given to Arthur absolutely and the balance of two-ninths (2/9) was placed in trust—in which trust Robert and Mary were, respectively, trustee and alternate trustee—to pay the entire income therefrom to Arthur during his life and, upon Arthur's death, then the principal of the trust was to be divided into two equal shares to decedent's granddaughters, Margaret and Virginia Jervis (both Margaret and Virginia being daughters of Arthur by a marriage dissolved by divorce); in the event of the death of either grandchild prior to Arthur's death, then the survivor would take. Robert and Mary (proponents) were named executor and alternate executor respectively.[2]

Prior to the probate of the challenged will, Arthur Jervis filed a caveat against the probate of the will alleging: (1) lack of testamentary capacity; and (2) that the will was procured by "undue influence, duress or constraint" practiced upon decedent either by Robert alone or by Robert and Mary "acting together in conspiratorial concert and confederation." Upon an-

---

the February 1964 will gave certain specific personal property, such as household effects, to his three children and certain grandchildren and gave the remainder of his estate to his three children equally and appointed Robert and Mary as executor and alternate executor respectively. As observed in appellant's brief, "The prior wills made equal bequests to each of the three children without distinction."

[2] The scrivener of this will had also prepared, at decedent's direction, several prior wills and a codicil.

swer filed, the matter was certified by the Register of Wills to the Orphans' Court Division of the Court of Common Pleas of Montgomery County. The parties joined in this certification. After hearing, that court entered the following decree: "AND NOW, August 3, 1970, the caveat of Arthur B. Jervis is dismissed, *the proponents' motion for compulsory non-suit* is granted and judgment entered for the proponents. The will of October 8, 1968 is herewith decreed to be valid and the Register of Wills is directed to probate the same forthwith." (Emphasis added.) From that decree the instant appeal was taken.

In view of the proponents' motion to quash this appeal as interlocutory,[3] we have decided, *sua sponte,* to consider the procedural posture of this appeal: whether the Orphans' Court Division of a Court of Common Pleas has the competence to enter a compulsory nonsuit in a will contest. We begin with the proposition that compulsory nonsuits are the creatures of either statute or a Rule of this Court. Although the Act of

---

[3] It is well settled that an appeal to this Court only lies from the refusal to take off a compulsory nonsuit and not from the original entry thereof. *See, e.g., Kukich v. Serbian Eastern Orthodox Church,* 415 Pa. 28, 202 A. 2d 77 (1964). The reason for this principle is that a rule to take off a nonsuit must receive consideration and disposition by a court en banc and not by the trial judge alone. *Nazareth Foundry & Machine Co. v. Marshall,* 257 Pa. 489, 101 Atl. 848 (1917).

Inasmuch as neither party questions the propriety of the nonsuit procedure, the proponents argue the same principle must apply since our recent Constitution abolished the concept of a separate Orphans' Court and made separate Orphans' Court divisions of a unified court known as "Court of Common Pleas." *But cf., Eberhardt v. Ovens,* 436 Pa. 320, 259 A. 2d 683 (1969) (concurring opinion) as to whether the jurisdiction and functions of the former separate Orphans' Courts have been changed, either expressly or by implication, by Article V of the new Constitution. We deem the issue raised by proponents to be totally irrelevant for reasons hereinafter expressed in this opinion.

March 11, 1875, P. L. 6, §1, 12 P.S. §645, permitted the entry of compulsory nonsuits *in actions at law,* and Rule 1512 of this Court extended the right to enter a compulsory nonsuit to actions in equity, our research fails to disclose any statute or rule of this Court which authorizes the entry of a compulsory nonsuit in a will contest. Moreover, by a host of decisions, it has been established that the Orphans' Court (now Orphans' Court Division) is a special tribunal for specific cases and is a court of limited jurisdiction which exercises only such power as is extended to it by statute, either expressly or by necessary implication. *See, e.g., Henderson Estate,* 395 Pa. 215, 149 A. 2d 892 (1959); *Webb Estate,* 391 Pa. 584, 138 A. 2d 435 (1958); *Colison Estate,* 356 Pa. 531, 52 A. 2d 184 (1947); *Brereton Estate,* 355 Pa. 45, 48 A. 2d 868 (1946).

While we entertained an appeal which involved the same procedure in *Townsend Will,* 430 Pa. 318, 241 A. 2d 534 (1968), *cert. denied,* 393 U.S. 934 (1969), and indicated in dicta that the procedure was acceptable, *Townsend* noted that the term "judgment" rather than "compulsory nonsuit" was more appropriate since the proponents of the will had introduced evidence. *Townsend,* in this respect, is not binding upon us and we conclude that a compulsory nonsuit is improper in a will contest until the General Assembly or this Court sees fit to provide such competence to the Orphans' Court Division of the Court of Common Pleas.

While the court below was obviously in error in permitting this procedure, we will consider this appeal on its merits and dismiss the motion to quash since the decree does affirm the validity of the will and directs the Register to probate the will.

In *Masciantonio Will,* 392 Pa. 362, 367, 141 A. 2d 362, 365 (1958), we said: "In reviewing this decree of the court below we are mindful that the findings of an

Orphans' Court judge, who heard the testimony without a jury, are entitled to the weight of a jury's verdict and are controlling upon us and that its decree should not be reversed unless it appears that the court has abused its discretion: [Citations omitted]. However, we are also mindful that if it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence the court's findings may be set aside: [Citations omitted]." *See, also, Treitinger Will,* 440 Pa. 616, 269 A. 2d 479 (1970). With this guideline in mind, we turn to the record before us.

We agree with the court below that the record does not reveal sufficient evidence to justify a finding that decedent at the time of execution of this will lacked testamentary capacity and the finding of the court below that "the evidence submitted by the (appellant) is weak, inconclusive and of doubtful weight" is adequately supported by the testimony of record.

On the question of undue influence allegedly exerted upon the decedent by Robert and/or Mary, the appellant must, in the case at bar, "establish the existence of a confidential relationship which, coupled with weakened mentality [footnote omitted] would [shift] the burden to [appellee] to prove that [decedent's] will was not procured by the imposition of undue influence upon [him]": *Brantlinger Will,* 418 Pa. 236, 250, 210 A. 2d 246, 254 (1965). Our review of the record convinces us of the propriety of the lower court's finding that appellant failed to carry the initial burden and that the charge of undue influence has not been sustained.[4]

---

[4] Unlike the court below, however, we deem the allegations contained in appellant's caveat sufficient to have enabled him to prove, if he could, the existence of a confidential relationship between the decedent and Robert and mental and physical infirmity,

232

Decree affirmed. Appellant to pay costs.

Mr. Justice ROBERTS concurs in the result.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While concurring in the decision of the Court, I approach somewhat differently the question whether the lower court was correct in granting compulsory nonsuit.

The sequence of proceedings in the lower court was that the proponents produced the purported will and offered proof of its validity in the form of testimony of the subscribing witnesses; the contestant then presented his case and rested. Rather than proceed with rebuttal testimony, the proponents then moved "for the entry of a compulsory nonsuit and the entry of judgment sustaining the will . . . as valid . . ." and directing that it be admitted to probate. The lower court found that the contestant had failed to meet his burden of proving either testamentary incapacity or undue influence. Accordingly, the nonsuit motion was granted and judgment declaring the will to be valid and directing the Register of Wills to admit it to probate was entered for the proponents.

It is true that nonsuit motions have not normally been employed in Orphans' Court proceedings, but I see no reason why they may not be utilized in a proper case. As this Court observed in *Townsend Will*, 430 Pa. 318, 241 A. 2d 534 (1968), Rule 1 of Section 3 of our Orphans' Court Rules conforms pleading and practice in the Orphans' Court (except where a statute or rule of court provides otherwise) to that prevailing in equity. Pennsylvania Rule of Civil Procedure 1512

not amounting to lack of capacity. However, the record fails to justify any finding of the existence of a confidential relationship and such an infirmity to justify shifting the burden to proponents to prove the lack of undue influence.

allows nonsuits in equity actions in the same manner and with the same effect as in actions of law. See Act of March 11, 1875, P. L. 6, §1, 12 P.S. §645. While it appears, then, that orphans' courts may grant nonsuits, the grant of a nonsuit is not an appealable order; all that is appealable is an order of the court *en banc* refusing to take off a nonsuit. *Kukich v. Serbian E. Orth. Church*, 415 Pa. 28, 202 A. 2d 77 (1964). It follows, therefore, that if the nonsuit motion was proper in the case at bar, the order allowing it was not appealable, and the motion to quash this appeal should be granted.

I agree, however, that this was not a proper case for a motion for a nonsuit. A compulsory nonsuit may be entered only against parties plaintiff (or counterclaimants). While the situation of a contestant to a will is analogous to that of the usual plaintiff in terms of burden of proof, he is not in fact a plaintiff. On the contrary, a contestant is defending against probate of a document he asserts not to be a valid will. After the proponent proves a prima facie case of validity, the mere fact that the burden of proof of invalidity is then upon the contestant does not make him a plaintiff. Moreover, under the Act of 1875, *supra,* a nonsuit motion is proper only when the defendant has introduced no evidence; in the case before us both parties introduced evidence.

In *Townsend Will, supra,* at 325, we said, "it would have been better for the Decree to have used the word 'judgment' instead of 'compulsory nonsuit'. . . ." In the case at bar, the order granting the nonsuit motion was embellished with both terms. I believe those words in the order pertaining to a "compulsory nonsuit" should be regarded as surplusage and ignored; the decree entering judgment for proponents, declaring the will to be valid and directing its probate, was entirely sufficient without that inappropriate terminology.