344 A.2d 834

**In re ESTATE of Melrose B. THOMAS, Deceased.**

**Appeal of Alice B. DOBSON and Ruby La Nace Hurst, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 4, 1974.

Decided Oct. 3, 1975.

Abraham Fishkin, Pittsburgh, for appellants.

Michael Hahalyak, Daniel T. Zamos, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

This is a will contest.

Melrose B. Thomas died November 22, 1972, leaving a purported will dated November 20, 1972. The will was admitted to probate in Allegheny County on December 5, 1972. An appeal from the Register of Wills' order admitting the will to probate was filed by Ora Gene Boor, decedent's brother,[1] in the Court of Common Pleas. Fol-

---

1. There is no blood relationship between Boor and the decedent. They are brother and sister by virtue of their adoption by common parents.

lowing an evidentiary hearing before a judge presiding in the Orphans' Court Division, an adjudication was entered reversing the order of probate and directing that the purported will be stricken from the record because the court found it had been procured through undue influence. Exceptions were filed by Alice B. Dobson, executrix, and Ruby La Nace Hurst, residual beneficiary under the will. After oral argument before a court en banc, an order was entered dismissing the exceptions. Both Dobson and Hurst filed this appeal.[2]

Thomas was fifty-nine years old at the time of her death. Other than the appellee Boor, she left no surviving relatives.

Thomas resided alone in an apartment in Ingram, Allegheny County, Pennsylvania. She was employed as a physical education teacher at Sto-Rox High School. On November 3, 1972, she became ill and was hospitalized.

Hurst, a former resident of Pittsburgh, now resides in Wheaton, Illinois, and is licensed to practice law in that state. She is the sole beneficiary (except for minor legacies totaling two thousand dollars) under the contested will disposing of an estate totaling ninety-four thousand dollars. Thomas and Hurst were close friends for many years prior to 1970, but in 1970 a coolness in the relationship occurred. This estrangement continued, and as a result Thomas and Hurst did not see each other from December 1970 until November 17, 1972.

In 1964 Thomas had executed a will, prepared by Dobson [3], leaving her entire estate to Hurst and, in the event of Hurst's death, to Hurst's husband. In 1968 an identical will, except for a change of executrix, was exe-

2. Since Hurst as a beneficiary under the will has standing to appeal, for the purpose of this opinion we need not reach the issue of Dobson's standing. But see, *Girt Estate*, 452 Pa. 156, 305 A.2d 372 (1973); *Faust Estate*, 364 Pa. 529, 73 A.2d 369 (1950); *Musser's Estate*, 341 Pa. 1, 17 A.2d 411 (1941).

3. Dobson is a practicing attorney in Allegheny County.

cuted by Thomas. However, sometime after this last mentioned will was executed and before Thomas entered the hospital on November 3, 1972, its provisions were crossed out and marked "void." Additionally, before entering the hospital, Thomas made handwritten notes indicating her estate was to be inherited by individuals other than Hurst. She also indicated this in a conversation with a close friend.

Upon learning of Thomas' hospitalization, Hurst came to Pittsburgh on November 17, 1972, by air flight. Upon arrival, she first proceeded to the Thomas apartment and made a search for Thomas' will. Failing in this search, she proceeded to the hospital to see Thomas, although she had been advised Thomas had left word before entering the hospital that she did not want to see her. At the hospital, she was permitted to see Thomas by the hospital authorities, because she told them she was Thomas' "only heir." At this time, Thomas' cancerous condition was viewed as terminal and the doctors had given up hope of saving her life.

Hurst returned to the hospital to see Thomas on November 20, 1972. During this visit, Hurst uncovered among the contents of Thomas' suitcase the voided 1968 will in which she was named sole beneficiary. Upon making this discovery, Hurst advised Thomas that unless she made a new will all of her property would escheat to the state. Shortly thereafter Hurst prepared the contested will on a typewriter borrowed from the hospital. The writing was then executed and acknowledged by Thomas to be her last will in the presence of two members of the hospital staff, who then signed their names thereto as witnesses.[4] Following this Hurst destroyed the 1968 voided will.

---

4. The will was not read to Thomas in the presence of the witnesses, nor could Thomas have read the will personally since she was without her contact lenses.

The trial court concluded the proof did not establish the existence of a confidential relationship between Hurst and Thomas at the time the challenged will was prepared and executed. Nonetheless, it ruled that under the peculiar circumstances disclosed by the evidence, the burden of proving the absence of undue influence in the procurement of the will was upon Hurst and that she failed in this burden; hence, the will was of no effect. Citing *Thompson Will,* 387 Pa. 82, 126 A.2d 740 (1956), the appellants contend that since no confidential relationship was established, the burden of proving undue influence remained with the contestant throughout and the trial court erred in ruling otherwise. After a careful study of the entire record, we rule the trial court correctly placed the burden of proof on the proponents of the will, but we also rule the court erroneously concluded no confidential relationship existed between Hurst and Thomas at the time the will was executed.[5]

A confidential relationship has been defined as the relationship that exists "when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both situations an unfair advantage is possible." *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). See also *McClatchy Estate,* 433 Pa. 232, 249 A. 2d 320 (1969). "A confidential relationship is created between two persons when it is established that one occupies a superior position over the other—intellectually, physically, governmentally, or morally—with the opportunity to use that superiority to the other's disadvan-

---

5. Since the findings of fact made by the hearing judge and affirmed by the court en banc are supported by competent evidence and no abuse of discretion or error of law is indicated, these findings are controlling in this appeal. See *Protyniak Will,* 427 Pa. 524, 235 A.2d 372 (1967). However, the trial court's conclusions, both of law and ultimate fact, are reviewable on appeal. *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962); *Sechler v. Sechler,* 403 Pa. 1, 169 A.2d 78 (1961).

tage." *Union Trust Company of New Castle v. Cwynar,* 388 Pa. 644, 653, 131 A.2d 133, 137 (1957).

Instantly, Hurst was an attorney, a member of the Illinois bar, and in good health, while Thomas was on her deathbed, extremely weak physically and "intermittently confused" mentally according to the hospital chart and other credible testimony.[6] Under such facts, can there be any doubt that the parties here were not dealing on equal terms, and that Hurst occupied a superior position to Thomas providing the opportunity, if so disposed, for Hurst to take an unfair advantage? We, therefore, have no hesitancy in concluding a confidential relationship existed.[7]

■ We recognize that even though a confidential relationship existed, this, in itself, was not sufficient to place the burden of proof on the proponents to show the absence of undue influence. See *Koon's Estate,* 293 Pa. 465, 143 A. 125 (1928). However, where, as here, the testator is of weakened intellect and the person in a confidential relationship receives the bulk of the estate, the burden is upon the person occupying the confidential relationship to prove that the gifts in the will were free and voluntary, clearly understood and unaffected by undue influence, or imposition, deception or fraud. *Button Estate,* Pa., 328 A.2d 480 (1974); *Jervis Will,* 443 Pa. 226, 279 A.2d 151 (1971); *Brantlinger Will,* 418 Pa. 236, 210 A.2d 246 (1965).

6. The hospital chart indicated that as of November 12, 1972, there was deterioration in Thomas' physical and mental condition. After this date, her condition was marked with "persistent mild encephalopathy" and there was also "disorientation." One of the nurses in attendance testified that "after that [November 17, or 18, 1972], I can't remember her saying anything specifically that I could understand."

7. If Hurst were acting as Thomas' attorney in the preparation and drafting of the will, a confidential relationship would be presumed. See *Leedom v. Palmer,* supra. However, we need not resolve whether Hurst was acting as the decedent's attorney at the time involved, since the proof without this circumstance is persuasive that a confidential relationship existed.

■ The appellants also assert there was insufficient evidence to support the lower court's finding that Thomas' mentality was weakened. However, in view of the contents of the medical records introduced into evidence and the testimony of the attending nurse, Cynthia Ann Konieczny, the finding of weakened intellect is fully supported by the record. Although Hurst and two other witnesses testified as to Thomas' alertness and coherence at the time the will was executed, the weight and credibility to be accorded the testimony was for the hearing judge. *Masciantonio Will,* 392 Pa. 362, 141 A.2d 362 (1958); *Quein Will,* 361 Pa. 133, 62 A.2d 909 (1949).

■ The appellants also assign as error the introduction into evidence of Thomas' hospital records. Counsel for appellants at trial specifically stated he had no objection to their admission into evidence, and hence, this issue has not been properly preserved for appeal. *Dilliplaine v. Lehigh V. Tr. Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

We have examined and considered the other allegations of error challenging various findings of fact made by the hearing judge, and determine the findings are fully supported by the record.

Decree affirmed. Costs on appellants.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY, J., concurs in the result.

MANDERINO, J., dissents.