356 A.2d 778
**In re ESTATE of Arthur EVANS, Deceased.**

**Appeal of Vivian KELLOW.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1974.

Decided May 12, 1976.

Reargument Denied July 15, 1976.

John S. Fine, Joseph P. Olexy, Wilkes-Barre, for appellant.

John L. McDonald, Wilkes-Barre, for appellee, United Penn Bank, executor of estate.

Frank Townend, Wilkes-Barre, John J. Pentz, Jr., Stroudsburg, William T. Jorden, Erie, for appellees, Enid David, Geraldine A. Baltzer, Mary Ann Toms & George A. Learn, Jr., Legatees and Heirs-At-Law.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Vivian Kellow, objected to the inventory, proposed schedule of distribution and final accounting of the executor of the estate of Arthur Evans. After appellant finished the presentation of her case, the lower court granted appellees' motion to dismiss appellant's objections. Appellant's exceptions to that order were denied in a final order by Judge Lopatto sitting as a court en banc. The thrust of her appeal to this Court is that certain contents of a safe deposit box were the subject of an inter vivos gift to her from Arthur Evans, the de-

ceased, and, consequently, should not have been included in his estate.

Appellant, the niece of Arthur Evans' deceased wife, began working for the Evans family when she was 16. For several years she took care of Mrs. Evans who for some years prior to death was an invalid. Appellant cooked meals for the Evanses, cleaned their house, did their laundry and generally cared for Mrs. Evans. She received adequate compensation for performing these needed services. When Mrs. Evans died, appellant continued to cook at least one hot meal a day for Mr. Evans, do his laundry and make sure his house was tidy. After appellant was married, she continued to perform these same services and visited Mr. Evans once a day. In May of 1971, following one of his four hospitalizations, the deceased moved into appellant's home.

Although at times Mr. Evans was confined to his bed because of water in his legs, he frequently took walks, had visits with his lawyers and made trips to his bank. On October 22, 1971, appellant's husband drove Mr. Evans and a friend of his, Mr. Turley, to town so that Mr. Evans might go to the bank. Turley testified that Mr. Evans spent about one hour going through the contents of his safe deposit box. Before leaving the bank, the deceased obtained both keys to the box.

Various witnesses presented by appellant testified to seeing the keys to the safe deposit box beneath appellant's mattress and to statements by Mr. Evans to the effect that the contents of the safe deposit box had been given to appellant. Mr. Evans entered the hospital for the last time on November 5, 1971. During this last hospital stay, Reverend Cunnings visited with him and was told that Mr. Evans was giving the Reverend's church $10,000.00 and that he had given the rest of his possessions and the keys to his safe deposit box to appellant. Mr. Evans expired on November 23, 1971.

Appellant relinquished the keys to the safe deposit box to a bank officer, but not without protesting that the contents of the box were hers. The box revealed a holographic will of Mr. Evans dated September 16, 1965, and approximately $800,000.00 in bonds, preferred and common stock and several miscellaneous items.[1]

The lower court correctly noted that the requirements for a valid inter vivos gift were donative intent and delivery, actual or constructive. With respect to donative intent, the court found:

"Turning to the facts of this case, certainly no one can reasonably argue that Arthur Evans lacked sufficient motive to make a gift to Vivian. The record clearly manifests, both by his conduct and his statements, donative intent, the first prerequisite."

Nevertheless, the court ruled that no delivery had been made. This result was predicated upon a finding that the deceased had not divested himself of complete dominion and control over the safe deposit box. After properly noting that constructive delivery is sufficient when manual delivery is impractical or inconvenient, the court reasoned:

"The record contains no evidence of circumstances which were such that it was impractical or inconvenient to deliver the contents of this box into the actual possession or control of Vivian.

Arthur Evans, although suffering physical infirmities and apprehensive of death, was nonetheless ambulatory. On October 22, 1971, he appeared at the Nanticoke National Bank in the company of Harold Turley and Leroy Kellow and spent approximately one hour going over the contents of his safe deposit box in a cubicle provided in the bank for that purpose. He left the bank after redepositing the contents and took with him only the keys which independent testimony indi-

---

1. The will was uncontested and under its terms provided for a $1,000.00 bequest to appellant.

cates he delivered to Vivian the next day. There was no manual delivery of the contents. The contents of the box remained undisturbed. The box, and its contents, were registered in the name of the decedent at the date of his death. The objects of the gift were not placed in the hands of Vivian, nor was there placed within her power the means of obtaining the contents."

Appellant now asserts three assignments of error: 1) that the lower court erred in ruling the testimony of appellant and her husband inadmissible under the Dead Man's Act, Act of May 23, 1887, P.L. 158, § 5, cl. (e), 28 P.S. § 322; 2) that the lower court erred in ruling there was insufficient delivery to sustain the inter vivos gift; and 3) that under our decision in *Jervis Will*, 443 Pa. 226, 279 A.2d 151 (1971), the Orphans' Court did not have the power to "nonsuit" her. We find these arguments unpersuasive and, therefore, affirm the decision of the lower court.

Appellant and her husband attempted to testify as to the transfer of the keys to the safe deposit box to her and of decedent's expressions of his intent to make a gift of the contents to her. In *Friedeman v. Kinnen,* 452 Pa. 365, 305 A.2d 3 (1973), we held that if the alleged donee fails to establish a prima facie gift by independent testimony, then his or her interest was adverse to the estate's and, consequently, such testimony was rendered incompetent under the Dead Man's Act, *supra.* For the reasons that will be discussed *infra,* we hold that the independent testimony failed to establish prima facie a gift and the testimony of appellant and her husband was properly excluded by the court below.[2]

2. Moreover, the testimony of appellant and her husband would only have corroborated the evidence of their other witnesses that Mr. Evans did give the keys to his safe deposit box to appellant with the intent of making a gift of the contents to her. Since the lower court accepted these facts and neither party now disputes them, appellant was not prejudiced by the ruling. The issue presented in this appeal did not turn upon a factual dispute as to

The law in this Commonwealth is well settled concerning the requirements of an inter vivos gift. In *Tomayko v. Carson*, 368 Pa. 379, 385, 83 A.2d 907, 908 (1951) we stated:

"A claim of a gift *inter vivos* against the estate of the dead must be supported by clear and convincing evidence. *In re Leadenham's Estate*, 289 Pa. 216, 137 A. 247; *Snyderwine, Admrx. v. McGrath*, 343 Pa. 245, 22 A.2d 644. In order to effectuate an *inter vivos* gift there must be evidence of an intention to make a gift and a *delivery*, actual or constructive, of a nature sufficient not only to *divest the donor* of all dominion over the property but also *invest the donee* with complete control over the subject-matter of the gift. *In re Pyewell's Estate*, 334 Pa. 154, 5 A.2d 123; *In re Rynier Estate*, 347 Pa. 471, 32 A.2d 736. It is claimant's burden to prove by *clear and satisfactory evidence* that a gift in fact was made. *Sullivan v. Hess*, 241 Pa. 407, 88 A. 544; *In re Kata Estate*, 363 Pa. 539, 70 A.2d 351; *Lochinger v. Hanlon*, 348 Pa. 29, 39, 33 A.2d 1. Cf. *In re Campbell's Estate*, 61 Pa.D. & C. 19."

In the instant case, the controversy focuses on whether there was an adequate delivery. In *Allshouse's Estate*, 304 Pa. 481, 487–488, 156 A. 69, 72 (1931), we elaborated on the requirement of delivery:

"As said in *Walsh's App.*, 122 Pa. 177, 187, 15 A. 470, 471, 1 L.R.A. 535, 9 Am.St.Rep. 83: 'If there remains something for the donor to do before the title of the donee is complete, the donor may decline the further performance and resume his own,' and again, at page 190 of 122 Pa., 15 A. 470, 472: '[i]t is not possible that a chancellor would compel an executor or administrator to complete a gift by the doing of any act which the alleged donor if living might have refused to

the events that occurred but rather as to the legal significance of those acts. Thus in any event, the evidentiary ruling now being challenged was in no way crucial to the outcome of the law suit.

do, and thereby revoked his purpose to give.' In *In re Campbell's Est.*, 7 Pa. 100, 47 Am.Dec. 503, Chief Justice Gibson stated: 'A gift is a contract executed; and, as the act of execution is delivery of possession, it is of the essence of the title. It is the consummation of the contract which, without it, would be no more than a contract to give, and without efficacy for the want of consideration.' Again, as we stated in *Clapper v. Frederick*, 199 Pa. 609, 613, 49 A. 218, 219: 'Without a complete delivery during the lifetime of the donor there can be no valid gift inter vivos. "Though every other step be taken that is essential to the validity of the gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it. It is an indispensable requisite, without which the gift fails, regardless of consequence": Thornt. Gifts, p. 105.' The consequence is that no matter how often or how emphatically the desire or intention of the donor to make the gift has been expressed, upon his death before delivery has been completed, the promise or purpose to give is revoked. *Scott v. Lauman*, 104 Pa. 593; 28 Corpus Juris, page 651."

We have recognized that in some cases due to the form of the subject matter of the gift or due to the immobility of the donor actual, manual delivery may be dispensed with and constructive or symbolic delivery will suffice. In *Ream Estate*, 413 Pa. 489, 198 A.2d 556 (1964), for example, the Court found there had been a valid constructive delivery of an automobile where the donor gave the keys to the alleged donee and also gave him the title to the car after executing an assignment of it leaving the designation of the assignee blank. The assignment was executed in the presence of a justice of the peace and the evidence was overwhelming that the name of the donee was to be inserted upon the death of the decedent.[3]

3. *Ream Estate*, 413 Pa. 489, 198 A.2d 556 (1964), involved an alleged gift causa mortis, however, the requirements for delivery

In *Elliott's Estate,* 312 Pa. 493, 167 A. 289 (1933), we held there was a valid constructive delivery of the contents of a safe deposit box where the donor turned over to the alleged donee the keys. There, however, just prior to the delivery of the keys a doctor had informed the non-ambulatory donor that death was imminent. Under those circumstances manual delivery was impossible.[4]

Appellant relies heavily on *Leadenham's Estate,* 289 Pa. 216, 137 A. 247 (1927), and *Leitch v. Diamond National Bank,* 234 Pa. 557, 83 A. 416 (1912). These decisions, however, support the Court's finding that there was no delivery in the instant case. In *Leadenham's Estate, supra,* the donor had rented a separate safe deposit box in the name of the intended donee, put the contents of his box into the newly rented one and delivered the keys to it to the donee. On those facts we held that the constructive delivery of the keys was sufficient to sustain the inter vivos gift because the donor had divested himself of dominion and control and invested the donee with complete dominion and control.

In *Leitch v. Diamond National Bank, supra,* the donor and donee were husband and wife and had lived together harmoniously for many years. The husband had three safe deposit boxes registered in his name and the name of his wife and he designated one of them as his wife's. He gave her the keys to that box. The Court found that she had complete control over that box and that he only entered it with her permission. Since she had complete control over the access to the box the Court found there was a valid delivery of the contents of the box to her.

In both of these cases, the determinative factor was that the donee had complete dominion and control over the box and its contents. In that posture we ruled

are the same as for a gift inter vivos. *Ream Estate, supra;* *Elliott's Estate,* 312 Pa. 493, 167 A. 289 (1933).

4. *Elliott's Estate, supra,* also involved an alleged gift causa mortis.

that giving the keys to the box to the donee was a valid constructive delivery. In the instant case, appellant did not have dominion and control over the box even though she was given the keys to it. The box remained registered in Mr. Evans' name and she could not have gained access to it even with the keys. Mr. Evans never terminated his control over the box, consequently he never made a delivery, constructive or otherwise.

Although appellant suggests that it was impractical and inconvenient for Mr. Evans to manually deliver the contents of his box to her because of his physical condition and the hazards of taking such a large sum of money out of the bank to her home, we need only note that the deceased was obviously a shrewd investor, familiar with banking practices, and could have made delivery in a number of simple, convenient ways. First, he was not on his deathbed. He was ambulatory and not only went to the bank on October 22, 1971, but took walks thereafter and did not enter the hospital until November 5, 1971. On the day he went to the bank he could have rented a second safe deposit box in appellant's name, delivered the contents of his box to it and then given the keys to appellant. He could have assigned the contents of his box to appellant. For that matter, he could have written a codicil to his will.

The lower court noted that the deceased was an enigmatic figure. It is not for us to guess why people perform as they do. On the record before us it is clear that regardless of Mr. Evans' intention to make a gift to appellant, he never executed that intention and we will not do it for him. On these facts, we are constrained to hold that there was not an inter vivos gift to appellant and that the contents of the safe deposit box were properly included in the inventory of Mr. Evans's estate.

■ · Finally, appellant characterizes appellees' motion to dismiss her objections as a motion for a "nonsuit" and, thus, error under our decision in *Jervis Will, supra.*

In *Jervis Will, supra,* we held that in a will contest, the Orphans' Court was without authority to enter a compulsory nonsuit. The instant case is not a will contest, but rather stems from objections to the executor's final inventory, accounting and schedule of distribution. Despite appellant's attempts to characterize the lower court's order as granting a compulsory nonsuit, the lower court framed its relief as granting appellees' motion to dismiss appellant's objections. As such, this case does not fall within the ruling of *Jervis Will, supra.* We note that nothing could be gained by remanding the instant cause and allowing appellees to present their defense since the lower court has already correctly ruled on the failure of appellant to establish a prima facie case of a valid inter vivos gift.

Decree affirmed. Each party to bear own costs.

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

ROBERTS, Justice (dissenting).

I dissent. The central issue in this case is whether donor made an adequate delivery of the gift to donee. The majority finds that adequate delivery was not made because the safe deposit box was leased solely in donor's name and supports this conclusion by pointing out that there were several alternative means of delivering the gift which would have been adequate. I believe that the inquiry should not be what form of delivery would have been clearly sufficient, but rather whether the delivery made by donor was adequate. I believe that it was.

In *Rynier Estate,* 347 Pa. 471, 32 A.2d 736 (1943), we said that delivery is determined on the facts of each case, with reference to the donor's intent.

"As the chief factor in the determination of the question whether a legal delivery has been effected is the intention of the donor to transfer title to the donee, as manifested by his words and actions and by the circumstances surrounding the transaction, it is evident that each case must depend largely upon its own facts."

Id. at 475, 32 A.2d at 738. We reaffirmed this statement in *Tallarico Estate*, 425 Pa. 280, 286, 228 A.2d 736, 740 (1967), and *Pronzato v. Guerrina*, 400 Pa. 521, 529, 163 A.2d 297, 300 (1960).

The majority suggests that donor was "obviously a shrewd investor, familiar with banking practices. . . ." From this "familiar[ity] with banking practices," which is nowhere shown on the record, and the absence of a joint lease for the box, it apparently concludes that donor did not intend a gift. There are two reasons why this result is not correct.

First, there is no doubt in this case that donor intended a gift. He told many people that he had given the contents of the box to appellant. In fact, there is competent testimony that donor directed donee to display the keys, hidden under her mattress, to several witnesses.

Second, it is apparent from the record that donor believed undisputed and unconditional delivery of the keys to be sufficient to complete the gift. Most of this Court's cases dealing with inter vivos gifts of the contents of safe deposit boxes turn on the delivery or nondelivery of the keys to the box to the donee. If the key was delivered, the gift was normally upheld;[1] if the key was not delivered, the gift was set aside, whether or not

---

1. See *King Estate*, 387 Pa. 119, 126 A.2d 463 (1956) (joint lease, donee had key to box, valid gift); *Leadenham's Estate*, 289 Pa. 216, 137 A. 247 (1927) (box rented for donee by donor, keys delivered to donee, valid gift); *Leitch v. Diamond National Bank of Pittsburgh*, 234 Pa. 557, 83 A. 416 (1912) (joint lease, donee had key to box, valid gift).

the box was jointly leased.[2]  I have found no case which turned on the presence or absence of a joint lease.  Given this line of authority, and accepting the majority's conclusion that donor was sophisticated in these matters, it must be concluded that donor believed delivery of the keys to the box completed the gift.  If this were not so, why would donor cause donee to take several witnesses into her bedroom to show them that she had the keys and why would he speak in terms that indicated a completed gift "I *gave* to Vivian  .  .  .  the keys and the contents *are* hers."  Because it is donor's intention to transfer title which is crucial to a valid delivery, and because this donor intended to transfer title, I dissent from the majority's conclusion.

This record firmly establishes appellant has shown a prima facie gift.  I would, therefore, vacate the decree and remand to give the estate an opportunity to present its evidence.

MANDERINO, J., joins in this dissenting opinion.

---

**2.**  See *Secary Estate,* 407 Pa. 162, 180 A.2d 572 (1962) (joint lease key not delivered to donee, no gift); *Chadrow v. Kellman,* 378 Pa. 237, 106 A.2d 594 (1954) (joint lease, key not delivered to donee, no gift).